## FRANK INGLEN v. THE STATE.

### No. 1420.   Decided November 25th, 1896.

**1.  Aggravated Assault—Step-father Upon Step-daughter—Evidence Sufficient.**

See, opinion, for facts stated, which, by a majority of the court, are held amply sufficient to sustain a conviction for aggravated assault by a step-father upon a step-daughter 13 years of age; the violence consisting in his slapping her in the face and causing her mouth to bleed.  HENDERSON, Judge, dissenting.

**2.  Same—Immoderate Punishment.**

See, opinion, for facts stated, upon which a majority of the court Hold: Conceding defendant's right to chastise his step-daughter, his chastisement was clearly and unquestionably more severe than the law would permit.  HENDERSON, Judge, dissenting.

**3.  Same—Excessive Verdict.**

See, opinion, for facts stated, on the trial of a step-father for an aggravated assault upon his 13-year-old step-daughter, upon which a majority of the court Hold: That a verdict assessing the punishment at a fine of $500 and fifteen months' imprisonment in the county jail is not excessive.  HENDERSON, Judge, dissenting.

**4.  New Trial—Drunkenness of Defendant at the Trial.**

On a motion for new trial upon the ground that appellant's condition on the trial, from drunkenness, was such as that he should not have been forced to trial, and which motion was sustained only by the affidavits of his wife and step-daughter. Held: It was remarkable that the affidavit of no bystander was obtained, and there having been no motion to postpone the case on that account, and the fact not having been called to the attention of the court when the case was put upon trial, the matter could not be insisted upon for the first time on motion for new trial.  HENDERSON, Judge, dissenting.

APPEAL from the Criminal District Court of Galveston.   Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for aggravated assault by an adult male upon a female; penalty, a fine of $500 and fifteen months' imprisonment in the county jail.

The injured female was the step-daughter of the defendant; the facts are sufficiently stated in the opinions.

*James B.* and *Chas. J. Stubbs*, for appellant.—The evidence does not show that defendant acted cruelly towards Bertha Kohnle; he slapped her but once; he was her step-father, and had the right to inflict moderate chastisement upon her.   She was under his care, lived with, was supported and being educated by him.   Penal Code, Art. 593, sub-div., 1; Gorman v. State, 42 Texas, 221; Standfield v. State, 43 Texas, 167; Snowden v. State, 12 Tex. Crim. App., 104; Dowlen v. State, 14 Tex. Crim. App., 61; Bolding v. State, 23 Tex. Crim. App., 172; Hutton v. State, 23 Tex. Crim. App., 386.

The verdict and judgment are excessive.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was charged with an aggravated assault upon his stepdaughter, was convicted and his punishment assessed at fifteen months in the county jail, and a fine of $500, and

appeals.   The girl testified that she was 13 years of age; that she was sitting on the steps of a grocery store, a short distance from the family residence, when the defendant approached her and ordered her to go home.   This she refused to do, whereupon he struck her with his open hand.   When he ordered her home, she asked the question, "Where is mamma?" and he then struck her.   She testified that the blow did not knock her down.   J. N. Stowe, a witness for the State, testified as follows:   "I saw the defendant strike Bertha Kohnle (the assaulted party) on the occasion she has just testified about.   I live in the house next to the house then occupied by the defendant and his family.   That night the defendant came home under the influence of liquor, smashed up the furniture, and broke some dishes, and ran his family out of the house. Bertha Kohnle went to the grocery store, carrying one baby in her arms and pulling another small child along by the hand.   The defendant then went to the grocery store, and, when he got there, Bertha Kohnle was standing on the steps of the grocery, and I saw him strike her.   I also heard the blow.   It knocked her down.   He struck her in the face. Afterwards she came back to my house, and I saw that she was bleeding at the mouth.   That grocery store is about one hundred and fifty feet from my house, where I was, and on the opposite side of the street. Bertha Kohnle is a girl, and is the defendant's stepdaughter.   Defendant is a full-grown man."   One Tidd testified for the State as follows: "I saw Bertha Kohnle at the house of the witness, Stowe, soon after she is said to have been struck by the defendant, and when I saw her she was bleeding at the mouth.   After washing her mouth with a wet towel, it still continued to bleed.   I didn't see defendant strike her, but, at the time he is said to have struck her, I heard what I took to be the sound of a blow."   Frank Inglen testified for himself:   "Bertha Kohnle is my stepdaughter, and lives in my house, and I support her.   I slapped her with my open hand, on the steps of the grocery store, on the occasion as has been testified about.   I am very fond of her, and didn't think it proper for her to be away from home at the grocery store at night.   I told her to go home, and, because she would not, I slapped her, as I considered I had a right to do.   I didn't see her mouth bleed.   I didn't strike her for any reason, except to make her go home." Pollmard, a witness for the defendant, testified also as follows:   "I saw the defendant strike Bertha Kohnle on the occasion that has been testified about here.   He struck her somewhere in the face." This is the statement of the facts.   It is contended by the appellant that under this testimony the verdict of the jury was excessive.   The statute assesses the punishment (this being an aggravated assault and battery) at a fine of not less than $25 nor more than $1,000, or by imprisonment in the county jail not less than one month nor more than two years, and the jury may impose both fine and imprisonment. There is a conflict in the testimony.   If what the girl swore was true, the blow given was not so severe as that testified to by some other witnesses.   If the version of the matter given by Stowe and Tidd be true,

then this was a wanton and very violent assault made upon the girl. Stowe states that the blow knocked the girl down, and that she bled. Tidd heard the blow, and saw the girl wash the blood out of her mouth with a wet towel, and the blood continued to flow. The defendant's witness, Pollinard, also saw the lick, and he says that he struck her somewhere about the face. The contention of the appellant is that he had a right to chastise the girl for disobeying him. There is another very important fact bearing upon this subject: Stowe says, "That night defendant came home under the influence of liquor, smashed up the furniture and broke some dishes, and ran his family out of the house." When Bertha Kohnle was commanded by defendant to go home, she refused and asked, "Where is mamma?" Evidently her mother and herself had been driven away from the house, and she did not wish to return until she was sure that her mother was at home, or else knew where she was. The defendant knew that he had driven his family from home in a very violent manner. It was natural for the girl to stop at the grocery store, and it was quite reasonable for her to be solicitous about her mother. While defendant may have had the right to order her home, under the circumstances of the case, he had no right to assault her because she did not obey him, for, by his own conduct, he justified a refusal on the part of the girl to go home. Concede, as above stated, these facts to be true; appellant was guilty of an unprovoked, violent assault and battery upon the girl. It was unnecessary, and, in fact, conceding that he had a right to chastise her, it was clearly and unquestionably more severe than the law would permit. We are of opinion that this court has no authority, under the circumstances of this case, to say that the verdict was excessive. The law permitted it, and in fact he could have been awarded much greater punishment than was assessed by the jury. The jury could have imposed a fine of five hundred dollars in addition to that assessed, and nine months' imprisonment in the county jail more than that given. It is contended, however, that this excessive verdict, so called, was brought about by the conduct of the defendant while being tried. What that conduct was, we are not informed, except by the defendant's motion for a new trial. This motion is supported by the affidavit of the wife and step-daughter of the defendant. It is very remarkable that the affidavit of no bystander was obtained. If appellant was drunk when called upon to announce "ready," he had counsel, and this matter was not called to the attention of the court in any way. No motion to postpone or continue the case was made, and for the first time it is brought forward in the motion for a new trial. Appellant testified in the case, and, so far as this record is concerned, his testimony is as intelligent as any of the other witnesses. There is nothing is his testimony tending to show that he was drunk, or that anything else ailed him. We are of opinion that the judgment should be affirmed, and it is accordingly done.        *Affirmed.*

DAVIDSON, Judge, concurs.

HENDERSON, JUDGE (dissenting).—I dissent from the opinion rendered by a majority of the court in this case, and believe that a new trial should have been granted. If the testimony of Bertha Kohnle is discarded altogether, and we take the testimony of Stowe, it shows, at the most, only one lick or blow by the defendant on the person of his step-daughter. No serious injury is shown, and the verdict of the jury assesses a fine of $500 and fifteen months' imprisonment in the county jail; and this verdict, it occurs to me, is excessive. If we consider the testimony of Bertha Kohnle (and she is the prosecutrix in the case), it would appear that the lick was struck with defendant's open hand on account of her refusal to go home when she was commanded to do so by her parent, and that he did not hurt her very much. The evidence shows, at the most, the infliction of a slightly immoderate correction, for which a much smaller punishment than for an aggravated assault would have been commensurate. On the motion for a new trial, appellant presented the affidavits of his wife and step-daughter, Bertha Kohnle, which are as follows, to-wit: "I, Bertha Kohnle, being duly sworn, on oath depose and say that I am the person alleged to have been assaulted by Mr. Frank Inglen, who was indicted, charged with having made an assault and battery upon me. He is my step-father, and has always treated me with kindness. At the time he is said to have struck me, he did so in a fatherly way, slapping me on the cheek with his open hand. It was about 9 o'clock at night, and I was seated on the step of the corner grocery store, about half a block from my home. My father, Frank Inglen, saw me there, and told me to go home. I said 'No,' I would not, and then he slapped me. The slap he gave me was not hard enough to make me cry. It is not a fact, as stated by Mr. John Stowe, that I fell down. I was seated on the grocery step at the time my father came up to me, and he slapped me once, not hard enough to make me cry. My father is a kind and generous man, and has always exercised towards me only that restraint that a child should expect to receive from her father. It is not true that he was violent or excessive in his conduct towards me on this occasion. I did not bleed from any blow received by me, but bit my lip when he struck me so that a drop or two of blood appeared upon my lips. On the trial of the case of the State against my father, I was not asked any questions by the attorney representing my father, and had no opportunity of making a statement as to these facts to the court; but I heard the statements made by Mr. John Stowe, and they are not true. My father did not strike me with violence sufficient to have made a report. Mr. John Stowe could not have heard the slap a block away. The time was night, and it was impossible for him to see my father strike me unless he had been close by. I did not fall down on the street from the effect of any blow, nor did I fall at all. Mr. John Stowe is not friendly towards my father. There was a man in the grocery store selling something to a colored man, but they were not attracted to the outside of the store by anything done there by my father to me. If I had been

hurt, I should have cried out. I was not hurt. My father had a right, I believe, as my father, to require me to go home, and I was not injured." The affidavit of Mrs. Anna Inglen is as follows: "My name is Anna Inglen. I am the wife of Frank Inglen, and the mother of Bertha Kohnle, who lives with Frank Inglen and myself. Bertha Kohnle was 8 years old when I married Mr. Frank Inglen, and she is now 13 years and 6 months of age. Mr. Inglen has kept her at Weigle's Institute in Germany, in Stuttgart, Ger., and in a school for young ladies in Luxemburg, and has always been kind and considerate to her, caring for her education and doing everything that a father could do for his own child. On the night that he is charged with having struck Bertha, I saw her within a quarter of an hour afterwards, and she told me all about it. She said that she was sitting on the steps of the grocery store; that her father saw her there, and told her to go home—that was no place for a little girl. She refused to go, and he slapped her with his open hand on the cheek. She said that she was not hurt; that she did not even cry. She was with me and my husband that night, as she always is, but she did not complain of his treatment toward her as being violent or excessive and cruel. She thought that he had a right to chide her for being away from home, seated in front of a grocery store, at that time of night, and having told her to go home, she knew he had a right to chastise her as he did. She was not hurt. She had bit her lip slightly, but this was rather because she had her lip between her teeth, and not because he slapped her so violently in the face. I was present upon the trial of Frank Inglen, and would have given this testimony if I had been placed upon the witness stand. At the time of the trial, Frank Inglen, my husband, had been indulging in strong drink, and was under the influence of liquor, and was not in a fit condition to have appeared before the court to have made his defense. He seldom drinks. Several years ago he was struck on the head, and since that time, whenever he drinks whiskey, it deprives him of the use of his sense. He becomes unreasonable and uncontrollable, loud in his talk and incoherent in his ideas. On the occasion of his trial he was not in a condition to understand what was going on. The attorney he had employed did not examine Bertha Kohnle with a view to elicit from her all the facts, and Mr. Frank Inglen then undertook to make his own defense, but was not in a mental condition to represent himself. I was not called for the defendant, although I was there, and ready and expecting to be put upon the stand. The attorney employed by Mr. Inglen left the case, and no opportunity was given to employ another attorney. Mr. Inglen was loud in his talk, and incoherent in his ideas, and created an unfavorable impression upon the court and jury by reason of his intoxication. Defendant's counsel abandoned the case when defendant most needed an attorney to represent him, both by reason of the imperfect, partial, and uncertain evidence given by the witnesses who testified, and also because of the intoxicated condition of the defendant, and the case proceeded to judg-

ment without the defendant having the benefit of legal talent. Mr. Frank Inglen was not of sound mind at the time he was tried, but was insane from the recent and excessive use of intoxicating liquors, and that this was an unusual condition with him, because he seldom drinks at all, but is uniformly a mild and courteous gentleman." From these affidavits it is evident that appellant was perhaps not in a condition to be tried. During the progress of the trial, on account of some misunderstanding between him and his lawyer, he was deprived of the benefit of counsel. His wife was in the court room, and, knowing important facts, was not placed upon the stand at all, and his stepdaughter was not cross-examined on behalf of the defendant. It is further shown that the principal testimony against the defendant, being the witness, Stowe, came from a prejudiced source—Bertha Kohnle testifying that said witness, Stowe, was not friendly towards her father. Under all these circumstances, it does occur to me that some influence besides the facts of the case itself instigated the jury in finding the verdict they did, and that, on the showing made by appellant for a new trial, the verdict of the jury should have been set aside, and a new trial granted him.