## W. M. EITEL v. THE STATE.

### No. 3896.   Decided January 19, 1916.

**1.—Aggravated Assault—Statement of Facts—Affidavit—Practice on Appeal.**

Where appellant in this court moved to strike out the statement of facts in the record, and attached an affidavit to his motion showing that he had presented a true statement of facts to the county attorney and county judge, who had failed to approve it, and prayed that the judgment be reversed and the cause remanded, because the statement of facts contained in the record was incomplete. Held that, under the circumstances, this court cannot strike out said statement of facts in the record and reverse the case on the ground that defendant was deprived of a true statement of facts; but will consider the same. Following Gibbs v. State, 70 Texas Crim. Rep., 278, and other cases.

**2.—Same—Rule Stated—Statement of Facts—Bills of Exception.**

This rule as above applied is not in conflict with the statutes or the decisions of this court, when statement of facts are filed too late, etc.

**3.—Same—Charge of Court—Sufficiency of the Evidence—Aggravated Assault.**

Where, upon trial of aggravated assault by an adult made upon a female, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

**4.—Same—Guardian—Ward—Requested Charge—Moderate Restraint.**

Where, upon trial of aggravated assault by an adult male upon a female, the evidence showed that the injured party had been emancipated as a ward under defendant's guardianship and had ceased to be under the control of the defendant as her guardian, his contention that he had the right of moderate restraint or correction over his said ward is untenable, and there was no error in the court's refusal to submit the defendant's requested charges with reference to a guardian's right of control of the person of his ward, and to inflict moderate restraint and punishment.

**5.—Same—Charge of Court—Res Gestae.**

Where, upon trial of aggravated assault, defendant requested a charge limiting the testimony of certain witnesses which the court refused, and it appeared in the record on appeal that all this testimony was res gestae, there was no reversible error.

Appeal from the County Court of Upshur. Tried below before the Hon. W. H. McClelland.

Appeal from a conviction of aggravated assault; penalty, a fine of $25. The opinion states the case.

*Warren & Briggs*, for appellant.—On question of striking out statement of facts: Shepherd v. State, 79 S. W. Rep., 316; Albert Shaffer v. State, 58 Texas Crim. Rep., 646, 127 S. W. Rep., 206.

*C. C. McDonald*, Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant, an adult male, was indicted and convicted of an aggravated assault and battery upon Katie Lee Carrington, a female, and his punishment assessed at the lowest allowed by law, a fine of $25, only.

The case was tried at the May term of the County Court, which adjourned on May 29th. The court by a proper order allowed twenty days after adjournment to file the statement of facts and bills of exceptions. The bills were filed within that time.

The statement of facts is in the record. The appellant has made a motion in this court to strike out and not consider it and then reverse the case because he was deprived of it. His attorney made an affidavit in the court below, which is contained in the transcript, and also makes substantially the same affidavit in this court, as a part of his said motion. Without reciting the full contents, it shows this state of fact: That in about ten days after the court adjourned, he prepared a statement of facts in duplicate and sought the county attorney for the purpose of getting an agreement thereto. There was some delay in seeing the county attorney, and after he did see him there was some other delay caused by the county attorney desiring time to consider his statement. However, within the twenty days he and the county attorney went over the statement of facts he had prepared and did not agree thereto. The county attorney within the twenty days took the copy left with him and made erasures and interlineations therein to conform to his contention of what the testimony was. The county judge was informed by appellant that he and the county attorney could not agree upon a statement of facts, and thereupon requested him to prepare such statement and file it within the time. It seems the judge undertook to do that, and we gather that he took as a basis for his statement of facts that which the county attorney had prepared. Either he or the county attorney, perhaps the county attorney, filed that statement with the clerk, who placed his file mark thereon within said twenty days. At the time it was filed the county judge had not certified nor approved the same. He did so specifically, however, some weeks later, all of which appears in the transcript.

Under these circumstances this court can not strike out the statement of facts and reverse the case, because appellant was deprived thereof, but will consider it. It has been the uniform holding of this court in a great many cases that, under such circumstances as detailed, that this court will consider the statement of facts. Gibbs v. State, 70 Texas Crim. Rep., 278; Jones v. State, 66 Texas Crim. Rep., 467,

147 S. W. Rep., 587; Villa v. State, 63 Texas Crim. Rep., 537;
Mansfield v. State, 62 Texas Crim. Rep., 631; Johnson v. State, 71
Texas Crim. Rep., 391; Solis v. State, 76 Texas Crim. Rep., 230, 174
S. W. Rep., 343.   See also section 41, Branch's Crim. Law, where a
considerable number of other and earlier cases which are in point are
cited.   Also see note 20, page 837, of Vernon's Ann. C. C. P., for a
large number of other earlier cases in point.

This rule is not in conflict with the statute and the other large
number of decisions by this court where statements of facts or bills
of exception are filed too late through the negligence of the appellant
or his attorneys.   The two rules are equally applicable to the given
state of fact to which they apply.

We think it necessary to give the substance of the material testimony.
Some of the facts are established by uncontroverted testimony.   Other
of the material facts are sharply disputed.   Miss Katie Lee Carrington
and her young brother, Troy, were left orphans when she was six
years of age.   For several years she lived with, and was taken care
of by her grandparents.   When she was about fifteen years old, her
uncle, Lark Carrington, was appointed guardian for both the persons
and estates of herself and brother.   This uncle soon afterwards died.
Thereupon, appellant, another uncle, by marriage, was appointed
guardian of their persons and estates.   She was sent off to school by
her respective guardians until about June, 1911, when she went to
appellant's to live with him and his wife.   Appellant and his wife
both, in substance, testified that Miss Carrington was hard to get along
with, and they both soon saw that they could not get along with her.
Appellant thereupon told her brother, Troy, that he thought it was
his duty to take her and try to get along with her.   That thereupon
both of them left his house and lived together, housekeeping, and made
a crop for themselves.   Appellant refused to longer keep her.   He
claimed she and her brother soon fell out and could not get along
together.   That her brother went off and got a job and stayed until
he got sick, when he returned to appellant's, where he remained sick
until he died.   That Miss Carrington, when she and her brother sep-
arated, went off to herself and got a job.   The uncontradicted testi-
mony shows that thereafter she looked out for herself exclusively,
appellant having nothing to do either with her control, maintenance
or support, and that she never at any time after she left his house
about a year and a half before the alleged assault therein, and never
thereafter, lived with him at all.   When appellant and his wife realized
that Troy was very sick and would doubtless soon die, his wife tele-
phoned to Miss Carrington at Terrell, where she was then working for
herself and making her own living, the condition of her brother, and
that if she wanted to see him before he died to come and do so.   Miss
Carrington thereupon accepted this invitation, went to appellant's as
a visitor to her sick brother and remained with him for a few days
until he died and was buried.   Appellant was not at his home but was
at work away therefrom when she reached his home, which was Thurs-
day before her brother died the following Wednesday.   That appellant

did not reach his home after she arrived there until Saturday evening, about night.

The case was tried May 19, 1915. Miss Carrington testified, and this was not disputed, that she was twenty-one years of age in February before. This would make her nearly nineteen years of age when the alleged assault and battery was committed upon her. She testified that for the two years prior to this trial she had taught school.

Some time before her brother died appellant wrote her a letter when she was at Terrell, telling her, in substance, that the doctor advised him to send her brother to a sanitarium for tubercular patients. That she answered this letter at the time and said to him therein, in substance, that, if her brother had not been beaten out of his property by appellant, he would have had plenty of money to have gone to a higher altitude or to some other place for his health and not have been a charge upon the State in a tubercular sanitarium.

After supper the night of the assault appellant went to a lodge meeting and did not return home until 10 o'clock that night. Miss Carrington testified that he was drinking. She and others said they smelled whisky on his breath. Mr. Petty, who was at the lodge hall with him, testified that appellant was drinking; that he smelled his breath, and on going back home he staggered. Appellant and his wife denied that he was drunk. His wife testified that she fixed him a whisky toddy before he went to the lodge and that he drank no more. Miss Carrington said that, after he returned from the lodge, she, his wife and he were sitting in the room across the hall from where her brother, Troy, was, engaged in conversation. That he asked her why she had written him such an insulting letter. She replied that he might be all right but she had no confidence in her aunt, his wife, and would not believe anything she would say. He thereupon caught her by the arm, pulled her out of the chair and slapped her. That she then screamed, ran out of the house and went to a neighbor's, about a quarter of a mile away. That in running out of the room to escape him she ran over a chair or something. All the testimony by appellant and his wife, as well as all the watchers with the sick man, shows, in substance, that appellant and his wife pursued Miss Carrington and attempted to find and catch her. Mr. Howell testified that he was in the room with the sick man and when he heard the racket went out into the hall and met appellant and his wife, and inquired of them what was the matter. Mrs. Eitel said to him: "This is my business. Go on back in the room and wait on the sick." That she also then said appellant slapped Katie, and, if he had caught her, he would have stamped her through the floor. That they all then went out into the yard looking for Miss Carrington, and that appellant then said that, if he could find her, he would kick her damned ass over the fence. Mr. Moore, another one of the watchers with the sick man, said that when he heard the racket he went out to see what was the matter, and, while appellant and several of the others were out in the yard looking for Katie Lee, appellant stated, if he could find her he would kick her damned ass off of the place. Mr. Petty, another one of the watchers,

who also went out at the time, said that when he got to the door of the hall appellant said to him: "This is not your affair. Go back and attend to the sick." That, while out in the yard, appellant said, if he could find her he would stamp the fatal sh——t out of her. Appellant and his wife denied that he slapped Katie, and his wife denied that she told Howell that, if appellant caught her, he would stamp her through the floor, she claiming that she told him appellant and Kate had had a spat, and she denied telling Mr. Moore that appellant said he would stamp her through the floor. Appellant himself testified that he must have lost his head and guessed he used some language that was improper. He admitted he got mad but did not think he used the language the witnesses said he used, but he was mad when she ran out and screamed without any cause. The testimony further shows that when all this occurred her brother was agitated and cried about it and sent some of the friends to the neighbor's for Katie and induced her to return, saying that he would protect her as long as he lived.

The court's charge was .in no way objected to at any time by the appellant so far as this record shows. After charging what an assault and battery was in substantially the language of the statute, and, which is usual in such cases, further told the jury that an assault and battery becomes aggravated when committed by an adult made upon the person of a female. Then gave this paragraph: "Violence used to the person does not amount to an assault or battery in the following cases: when committed in the moderate restraint of parent upon a child, guardian upon the ward or teacher upon the pupil. Whether the punishment is moderate or excessive must necessarily depend upon the age, sex, condition and disposition of the child or ward; taken in connection with all the attending and surrounding circumstances as well as the intent of the one inflicting the punishment." Next told the jury the punishment for an aggravated assault and battery, and then submitted the case to them, requiring that, if they believed from the evidence beyond a reasonable doubt that appellant at the time alleged committed an aggravated assault and battery upon Miss Carrington, to find him guilty and assess the proper punishment. He also told the jury the burden of proof was on the State and that the defendant was presumed to be innocent until his guilt was established beyond a reasonable doubt, and that, if they had a reasonable doubt, to acquit him.

Appellant complains that the court erred in refusing to give two special charges requested by him. In one of these he would have told the jury that the proof showed that at the time of the assault appellant was the legal guardian of Miss Carrington; that violence used to the person of another does not amount to an assault and battery in the exercise of the right of moderate restraint or correction of the parent over the child and the guardian over the ward; that a guardian has the same right of restraint or correction over the ward as the parent over his child. Then that, if appellant took hold of or slapped Miss Carrington, yet, if they find he did so in the exercise of his right of moderate restraint or correction, to acquit him; or, if they had a

reasonable doubt whether he did so in the exercise of his right of moderate restraint or correction, to acquit him; and, in determining this issue, that appellant is not presumed to be guilty from the commission of the offense; but the law presumed that he had the right to inflict the punishment, and they would judge of his guilt by his acts, conduct and statements made at the time, taking into consideration the acts and conduct of Miss Carrington; and that his guilt is not measured alone by the severity of the punishment but by his intention in inflicting it; and, although they find the punishment was more severe than it should have been, yet, if done in good faith by him, without intention to injure, but to compel respect for his rightful authority as guardian, then they must acquit him.

The other of his requested charges would have told the jury: that an aggravated assault and battery committed in the moderate restraint of a parent upon a child, guardian upon the ward, or teacher upon the pupil, is no offense. Then, if they believed from the facts that the appellant at the time he pulled Miss Carrington from the chair and slapped her, if he did slap her, was the legally appointed guardian, and, if they further believed, viewing the facts and circumstances from his standpoint at the time, his restraint or correction of Miss Carrington was moderate, or if they had a reasonable doubt that it was moderate and that he used no more force or violence than was necessary to subject her to submission or chastisement for disobedience, if any, that said chastisement or slapping would not be a violation of the law, and acquit him. Further, that in this class of cases his intention is the principal ingredient of the offense, and, if he had no intention of using more restraint or punishment than was necessary viewed from his standpoint, or, if they had a reasonable doubt that he used no more restraint than was necessary, to acquit him.

In our opinion neither of these charges was the law of this case, nor applicable thereto, and neither of them should have been given.

The Revised Civil Statutes (arts. 4122-4123) prescribe that the guardian of the person is entitled to the charge and control of the person of his ward and the care of his support and education, "and his duties shall correspond with his rights." That it is the duty of the guardian to take care of the person of such minor and "to treat him humanely." The converse of this is equally true, that, where the guardian does not have charge and control of the person of his ward, he has no right of moderate restraint or correction of his ward. Mr. Bishop, in section 885, volume 1, of his Criminal Law, says: "Not every guardian has the custody of the ward, and no reason appears why one without it should have the right to chastise." Mr. Wharton, in his Criminal Law, volume 2, section 828, in treating of the right of even a parent to chastise his child, says: "The same doctrine applies to persons standing *in loco parentis*. But, a 'child' in this sense is not merely a minor but must be a minor under tutelage. *A minor who is emancipated can not thus be brought into subjection.*" (Italics ours.)

Judge Moore, in Gorman v. State, 42 Texas, 221, said: "If the

minor children of the wife are recognized and treated as members of the family of their step-father, and are supported and maintained by him, there can be no doubt that he stands to them in *loco parentis,* and may exercise the control and authority of a parent over them."

Chief Justice Roberts, in Stanfield v. State, 43 Texas, 167, in discussing an aggravated assault of an adult male upon a child, of the right of moderate correction, said: "If it was not moderate, but excessive, he was guilty as charged of an aggravated assault and battery by having exceeded the boundary of his legal right as guardian under the law, and placed himself in the attitude of a stranger and not a parent of the child."

Judge Roberts also, in State v. Stephenson, 20 Texas, 151, said: "It has ever been held that it is incumbent on the parent, guardian, and master of an apprentice, to show the circumstances and relations which would justify an act of violence. And from this it would necessarily follow, that they need not be negatived by averments in the indictment."

Our statute (art. 1009, P. C.) on the subject of assault and battery says: "When an injury is caused by violence to the person, the intent to injure is presumed; and it rests upon the person inflicting the injury to show the accident or innocent intention."

In Inglen v. State, 36 Texas Crim. Rep., 472, it was shown that Inglen got drunk, went to his house and at night drove therefrom his step-daughter, thirteen years of age, and other members of his family. This child, thus driven from home, went to a grocery store about 150 feet away and was standing on the steps of the store when Inglen approached her and ordered her to return home. She refused. He thereupon slapped her in the face with his open hand. The girl testified he did not slap her down. Others saw it. One testified that he did slap her down. He and others also testified that the lick caused blood to flow from the child's mouth. The jury convicted him and assessed his punishment at a fine of $500 and fifteen months confinement in the county jail. He attacked the verdict as excessive and claimed under the statute he had the right to correct and punish her as a parent. Judge Hurt said: "While defendant may have had the right to order her home, under the circumstances of the case he had no right to assault her because she did not obey him, for by his own conduct he justified a refusal on the part of the girl to go home." And, further: "Appellant was guilty of an unprovoked, violent assault and battery upon the girl. It was unnecessary, and, in fact, conceding that he had the right to chastise her, it was clearly and unquestionably more severe than the law would permit." And affirmed the case.

The unquestioned testimony by appellant, his wife, Miss Carrington and others all show appellant had no care nor custody whatever of Miss Carrington at the time of the assault and battery, nor for more than a year and a half continuously prior thereto. That in fact he had emancipated her so far as his care, custody and control of her was concerned, and that she was looking out for herself, making her own living and support, was not in his household as a member of his family

at the time, and under the facts and circumstances of this case he had no right whatever as her guardian or otherwise to punish her. The statute (art. 1016, P. C.) says: "No verbal provocation justifies an assault and battery, but insulting and abusive words may be given in evidence in mitigation of the punishment affixed to the offense." The jury assessed the lowest punishment possible.

The court committed no error in refusing appellant's special charge restricting their consideration of the testimony of some of the witnesses to what Mrs. Eitel said in appellant's presence, as shown by the statement of the testimony above, nor his requested charge limiting the testimony of the several witnesses as to what appellant at the time said of what he would do to Miss Carrington if he caught her, as shown by the statement above. Clearly all this testimony was *res gestae* of the assault and battery and all admissible as original testimony, and it would have been improper for the court to have limited it as requested by appellant's said special charges.

The judgment is affirmed.

*Affirmed.*