Stephen ASSITER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 07–99–0051–CR to 07–99–0053–CR.

Court of Appeals of Texas,
Amarillo.

Oct. 17, 2000.

Tom Hamilton, Brent Hamilton, LaFont, Tunnell, Formby, LaFont & Hamilton, Plainview, for appellant.

Becky McPherson, Briscoe County Dist. Atty., Floydada, for appellee.

Before QUINN and REAVIS and JOHNSON, JJ.

PHIL JOHNSON, Justice.

Appellant Stephen Assiter appeals from separate convictions for injuries to three of his children. He asserts by four issues that the evidence was legally and factually insufficient to support the convictions and that the trial court erred in excluding certain expert testimony during the guilt or innocence phase of trial. We affirm.

## BACKGROUND

On August 27, 1997, appellant Stephen Assiter spanked three of his children, Chris, Wendy and Tye,[1] after they denied breaking a thermometer located in the minnow room of a marina which was operated by appellant and his wife. After each child received six "licks" with a boat oar, Chris admitted that he broke the thermometer, and appellant stopped spanking the children. The following day, Tye complained to his schoolteacher that he had been spanked and would not be able to run during recess or his P.E. class because he was sore. A school nurse examined Tye and found bruises on his buttocks. Chris

and Wendy were also examined, and both children had bruises on their buttocks as well. School officials contacted the Briscoe County Sheriff and Child Protective Services, and appellant was eventually indicted for intentionally and knowingly[2] causing bodily injury to each of the three children, who were then younger than 15 years of age, by hitting each child with a wooden object. The indictments also included a charge that appellant intentionally, knowingly and recklessly caused bodily injury to each child. See TEX.PEN.CODE ANN. § 22.04(a)(3), (c)(1) (Vernon 1994). The verdict forms as to whether appellant recklessly caused bodily injury to the children were submitted contingent on not guilty answers to the verdict forms on whether appellant intentionally or knowingly caused bodily injury to the children. Because the jury found appellant guilty of intentionally or knowingly causing bodily injury to the children, the jury did not answer the forms inquiring whether he recklessly caused bodily injury to the children.

■ The three cases were consolidated for trial. As part of the Court's Charge, the jury was given an instruction concerning the defense of use of justifiable force[3] in disciplining the children which read in part as follows:

[I]f you believe from the evidence beyond a reasonable doubt ... that the

1. Chris was born on 7–23–84; Wendy on 10–6–86 and Tye on 11–14–88. Briefs for both appellant and the State list the children's ages as 13, 11, and 9, respectively.

2. The verdict forms included in the court's charge to the jury asked whether appellant "intentionally *or* knowingly" caused bodily injury to each child. No issue is presented as to the variation in language.

3. A justification defense under Chapter 9 of the Penal Code is not considered an affirma-

tive defense. Section 9.02 provides, "It is a defense to prosecution that the conduct in question is justified under this chapter." Chapter 2 of the Penal Code further provides for different standards of proof in establishing a defense, as opposed to an affirmative defense. When a defense issue is raised, a reasonable doubt on that issue requires acquittal. See § 2.03(d). However, when an affirmative defense is raised, the defendant must prove the issue by a preponderance of the evidence. See § 2.04(d).

defendant ... did then and there use force on the said [child] in committing the offense of injury to a child as alleged in the Indictment ... but you further find or have a reasonable doubt thereof that the defendant reasonably believed that at that time the degree of force used, if any, was necessary to discipline said child or to promote the welfare of said child, you will acquit the defendant and say by your verdict 'not guilty.'

The jury convicted appellant of intentionally or knowingly causing bodily injury to each of the three children. Appellant elected to have the judge determine his punishment. The trial court assessed his punishment at ten years confinement in the Institutional Division of the Texas Department of Criminal Justice, probated for ten years.

Appellant urges reversal of his convictions via four issues. His first two issues assert that the evidence was legally insufficient and factually insufficient to sustain the convictions. By issue three he complains of the exclusion of certain expert testimony by Dr. Scott Blakeman; by issue four he complains of the exclusion of certain expert testimony by Richard Wall, Ph.D, from the guilt or innocence phase of trial.[4]

Appellant and the State have briefed the cases together. Because of the nature of the cases and record, we address the cases together, except as specifically noted otherwise in our opinion.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

By his first two issues, appellant contends that the evidence was legally and factually insufficient to establish his guilt.

### A. Law

■ When reviewing challenges to both the legal sufficiency and the factual sufficiency of the evidence to support the verdict, we first review the legal sufficiency challenge. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). If the evidence is legally sufficient to support the verdict, we then review the factual sufficiency challenge, if one is properly raised. *Id.* Our review is taken being mindful that the jury is the sole judge of the weight and credibility of the evidence. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997).

■ The evidence is legally sufficient if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clewis*, 922 S.W.2d at 132. All the evidence is reviewed, but evidence that does not support the verdict is disregarded. *See, e.g., Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). If the legal sufficiency challenge is sustained, then a judgment of acquittal must be rendered. *Clewis*, 922 S.W.2d at 133.

■ A factual sufficiency review of the evidence begins with the presumption that the evidence supporting the jury's verdict was legally sufficient under the *Jackson* test. *Clewis*, 922 S.W.2d at 134. Factual sufficiency review is accomplished without viewing the evidence in the light most favorable to the prosecution, as the evidence is viewed in determining legal sufficiency. *Id.* The evidence is factually

---

4. Dr. Wall testified without objection to the substance of his testimony during the punishment phase of trial.

sufficient to support the verdict if the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Stated otherwise, the evidence is not factually sufficient to support a conviction if the appellate court determines, after viewing all the evidence, both for and against the finding in a neutral light, that the proof of guilt is so obviously weak as to undermine the confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000) (en banc). If the evidence is factually insufficient, the conviction should be vacated and the cause remanded for a new trial. *Clewis,* 922 S.W.2d at 133–34.

When a defensive issue is raised, and the State has the burden of proof to negate the defense, *see* TEX.PEN. CODE ANN. § 2.03 (Vernon 1994), then legally sufficient evidence supporting a conviction exists if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and also could have found against the appellant on the defensive issue beyond a reasonable doubt. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). A jury implicitly rejects a defense by finding the defendant guilty. *Id.* at 422.

The Penal Code defines bodily injury as "physical pain, illness, or any impairment of physical condition." TEX.PEN. CODE ANN. § 1.07(a)(8) (Vernon 1994). A parent may use force, but not deadly force, against a child younger than 18 years if the parent "reasonably believes the force is necessary to discipline the child or to safeguard or promote his welfare." *See id.* at §§ 9.02, 9 .61(a). Reasonable belief is defined as "a belief that would be held

by an ordinary and prudent man in the same circumstances as the actor." *Id.* at § 1.07(42). The use of force under section 9.61 is not justified simply because of a parent's subjective belief that the force is necessary; rather, the use of force is justified only if a reasonable person would have believed the force was necessary to discipline the child or to safeguard or promote the child's welfare. *See generally, Teubner v. State,* 742 S.W.2d 57, 59 (Tex.App.— Houston [14th Dist.] 1987, pet. ref'd), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 621 (1988) (section 9.61 justifies force against a child under a "reasonable belief" standard). The standard is an objective standard. *See id .*

Injury to a child is considered a result-oriented crime; that is, the accused acts with intent if it is his conscious objective or desire to cause the result. *See Alvarado v. State,* 704 S.W.2d 36, 39 (Tex. Crim.App.1985); *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982); *Hill v. State,* 883 S.W.2d 765, 769 (Tex.App.— Amarillo 1994, pet. ref'd). Intent may be inferred from the acts and the words of the accused, as well as the surrounding circumstances. *See Hill,* 883 S.W.2d at 769.

### B. Analysis

Tina Nance, Tye's schoolteacher, testified that on the morning of August 28, 1997, Tye told her he had been spanked and had "a big bruise." Tye told her that it hurt him to sit in his chair because he was sore, and he would not be able to run at recess or in his P.E. class because of the soreness. Ms. Nance also observed that Tye had difficulty moving and walking. Ms. Nance testified that she went with Tye to the school nurse to obtain a written excuse for Tye's P.E. class. At the nurse's office, Ms. Nance viewed Tye's bruises and testified that the bruises were black and

dark purple and approximately the size of a grapefruit on each buttock.

Lana Burson, the school nurse, testified that Tye had severe bruising with black, blue, and red coloring. Ms. Burson also viewed Wendy's buttocks and stated that both buttocks had dark black and blue bruises with red swollen areas, approximately ten to twelve centimeters in size. Ms. Burson took pictures of Wendy's buttocks. The pictures were entered into evidence by the State.

After Ms. Burson viewed Tye and Wendy, she contacted the Briscoe County Sheriff and Child Protective Services. She opined that she had 13 years experience as a nurse, and based on her experience, Tye's bruising was caused from "extensive trauma, force."

Two other school officials also testified for the State. Patsy Towe, teacher and school counselor, stated that she saw all three children that morning. She viewed Wendy's buttocks and testified they were covered with black, blue, and purple bruises. She also observed that Chris was limping, and testified that he told her "he'd gotten a whipping the night before and that he had blisters." Larry Mantle, teacher and football coach, viewed Chris's and Tye's buttocks during the morning and testified that black, purple, green, and red bruises covered the buttocks of both boys. He also stated that he had never seen bruises of that particular size before.

Sheriff Max Whitworth testified that he responded to a call from Ms. Burson, and saw Chris, Wendy, and Tye during the morning of August 28, 1997. He also viewed and photographed Chris's and Tye's buttocks and testified that both boys had swollen buttocks with red, purple, and black bruises. Sheriff Whitworth seized the wooden boat oar. The State introduced the oar into evidence. Sheriff Whitworth testified that his department had no prior reports of appellant's alleged abuse of his children.

Tye and Wendy were called to testify about their spankings during the State's case-in-chief. Both Tye and Wendy testified that appellant spanked them with the boat oar because neither one of them or Chris admitted to breaking the thermometer. Tye verified that he told his schoolteacher he needed an excuse for his P.E. class because his buttocks hurt. Wendy also verified that after all the children received their first three "licks," she and Tye were crying and asked Chris to admit he broke the thermometer. Also, Wendy stated that the boat oar broke while the children were being spanked, and she thought it broke while Chris was being spanked.

Dr. Scott Blakeman testified on behalf of appellant. Dr. Blakeman saw the children during an office visit on September 3, 1997, approximately one week after the spankings occurred. Dr. Blakeman's medical specialty is in family practice, and Child Protective Services scheduled the appointment for the children. He testified that the children's bruises were "pretty much almost completely gone in a week." He stated that severe bruises would take approximately two and one-half weeks to heal. Although Dr. Blakeman testified that the children were not in pain when he saw them, he agreed that based upon the State's photographs of the children's buttocks, the bruises would be painful.

Both appellant and his wife testified. Mrs. Assiter testified that she and her husband noticed the children's bruises the evening of the spankings, and her husband apologized to the children because "he didn't mean to spank them, you know, so hard that it would hurt their bottoms like that." She also stated that Tye told her the morning after the spankings, "My bot-

tom is sore." During cross-examination, Mrs. Assiter testified that the children were yelling and crying after they were first spanked with the boat oar.

Appellant testified that he previously spanked the children on the bottom of their feet as a form of discipline, but this proved to be ineffective. Appellant claimed to also use other methods to discipline the children, including "timeouts" and removal of privileges. As a last resort, appellant testified that he spanked the children's buttocks with a hand, belt, or paddle. Appellant testified that he had used the boat oar to spank the children on previous occasions,[5] but the children were not bruised on these occasions, nor did he intend to cause bruising by the spankings in question. Appellant acknowledged that he intended for the spankings to hurt a little bit as a form of punishment. He acknowledged that the children were crying loudly after he gave them their first three "licks." Finally, appellant stated that he apologized to the children when he discovered their bruises and told them that the spankings were deliberate because they did not tell the truth about the thermometer, but that he did not intend to bruise them.

Viewing the evidence in the light most favorable to the verdict, the testimony and evidence were sufficient for a rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt, and to have found against appellant on the justification defense beyond a reasonable doubt. *Adelman,* 828 S.W.2d at 421. The evidence was legally sufficient to support appellant's conviction. Appellant's first issue is overruled.

We next consider appellant's second issue, by which he contends that the evidence shows the spankings were not excessive, and the State did not prove his intent to cause bruising when he spanked the children. He asserts that the evidence is, therefore, factually insufficient to support the convictions. In considering this issue we consider all the evidence, not just that favorable to the jury verdict. Also, we note that whether the spankings were excessive or whether appellant intended to bruise his children are not questions material to appellant's guilt. Appellant was not charged with or convicted of spanking the children excessively or bruising the children. He was indicted for, and the jury found appellant guilty of, intentionally or knowingly causing bodily injury to the children. "Bodily injury" was defined as physical pain, illness, or any impairment of physical condition. The definition tracked the language of the Penal Code. We construe the issue to challenge the jury verdicts that he intentionally or knowingly caused bodily injury to the children. Tex. R.App.P. 38.1(e).

Appellant's mother, Addie Assiter, testified that she had never seen her son spank his children and had never seen bruises on the children. She also stated that the bruises caused from the spankings in this instance faded after one week.

Cory Kemp, a friend of appellant and appellant's family, testified that he had never witnessed appellant spanking his children. He stated that he saw the children swimming at the lake approximately one to seven days after the spankings and did not witness any bruising on the children.

Sarah Grothe, family friend and occasional houseguest in appellant's home, tes-

---

**5.** Appellant testified that during April through August of 1997, the boat oar had been used on approximately six occasions (mostly on Chris). The oar was used on Wendy on one occasion and perhaps on one occasion on Tye.

tified that she witnessed the spankings on August 27, 1997, and was within 15 feet of where the spankings occurred. She stated that she did not see any bruises on the children; that appellant did not intentionally bruise the children when he spanked them; and that appellant did not use excessive punishment.

Dr. Blakeman testified that when he saw the children approximately one week after the spankings, Tye's bruises were considered a "three" on a scale of one to ten. He further testified that the buttocks are more susceptible to bruising than other areas of the body. Finally, both appellant and his wife testified that appellant did not intend to bruise the children; that appellant was not aware that spanking the children with the boat oar would cause bruising because the children were not previously bruised when spanked with the oar; and that appellant apologized to the children after discovering their bruises from the spankings. As noted above, appellant testified that he intended for the spankings to hurt the children to some extent.

 It was within the province of the jury to consider the demeanor and credibility of the witnesses in weighing any conflicting testimony. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App. 1997). A rational jury could have determined beyond a reasonable doubt that an ordinary and prudent man in the same circumstances as appellant would not have used a boat oar to spank the children, and therefore to have resolved the justifiable force defense against appellant. The jury's decision to reject the justifiable force conclusion urged by appellant is not so against the great weight and preponderance of the evidence as to be manifestly unjust. The verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,*

922 S.W.2d at 135. Appellant's second issue challenging factual sufficiency of the evidence is overruled.

## EXPERT TESTIMONY

By his third and fourth issues, appellant contends that the trial court erred in excluding a portion of Dr. Scott Blakeman's testimony, as well as the entire testimony of Dr. Richard Wall, from the guilt-innocence phase of trial.

### A. Law

Texas Rule of Evidence 702 governs admissibility of expert evidence. Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

 Under Rule 702, the trial court must be satisfied that three conditions are met before expert testimony is admitted: (1) the witness qualifies as an expert by reason of his knowledge, skill, education, training, or experience; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the jury in deciding the case. *Alvarado v. State,* 912 S.W.2d 199, 215–16 (Tex. Crim.App.1995); *Reid v. State,* 964 S.W.2d 723, 729 (Tex.App.—Amarillo 1998 pet. ref'd). The trial court has wide discretion in determining whether a witness qualifies as an expert. *Duckett v. State,* 797 S.W.2d 906, 910 (Tex.Crim.App.1990).

 Two themes are prevalent within the language of the rule allowing the use of expert testimony. First, the jury must not be qualified to intelligently

and to the best possible degree determine the particular issue without benefit of the expert witness's specialized knowledge. Second, the use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. *See Duckett,* 797 S.W.2d at 914. When the jury is equally competent to form an opinion about the ultimate fact issues as is the expert, or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000) (per curiam).

■■■ The trial court's determination to admit or exclude testimony of an expert witness will not be disturbed absent a clear abuse of discretion. *Alvarado,* 912 S.W.2d at 215–16; *Reid,* 964 S.W.2d at 729.

### B. Analysis—Testimony of Dr. Scott Blakeman

■■■ Dr. Scott Blakeman, a physician, testified that he examined Chris, Wendy and Tye on September 3, 1997. On that date there was evidence of prior bruising of the buttocks of the children, but the bruises had almost completely healed. At the time he examined the children they were not in pain from the bruising. He agreed that bruising of the nature shown by photographs previously identified as being of the children's buttocks following the August 27th spanking would be painful.

The trial judge sustained the State's relevancy objection to testimony by Dr. Blakeman describing the demeanor of the children at the time he examined them. Appellant's attorney perfected a bill of exceptions and offered the testimony (1) for purposes of diagnosis and (2) to show the effect the spanking had on the children. On appeal appellant urges that the exclud-

ed testimony was relevant to (1) rebut the testimony of State's witness Nurse Lana Burson as to the seriousness of the bruising of the children from the spanking, pursuant to Tex.R.Evid. 107; (2) to establish the extent of the injury; and (3) to establish all the facts and circumstances known to Dr. Blakeman which would "demonstrate Appellant's reasonable belief that the spanking was necessary to accomplish the discipline."

The State responds, in part, by urging that the testimony offered by the bill of exceptions is at variance with the bases for admissibility set out in appellant's brief. That is, the State says that the substance of the bill of exceptions testimony does not rebut testimony of Nurse Burson, does not establish or assist in establishing the severity of the physical injuries, nor does it contain any facts or circumstances tending to demonstrate appellant's belief as to the necessity of the spanking. The State further (1) questions Dr. Blakeman's qualifications as an expert to opine on the effects of the spankings on the children, and (2) urges that appellant's issue as framed on appeal does not conform to the offer of evidence made in the trial court and that appellant has, therefore, failed to preserve error.

We agree with the State's position that the excluded evidence would not have rebutted the testimony of Nurse Burson, did not establish the extent of the physical injuries to the children, and did not contain facts and circumstances known to Dr. Blakeman which related to appellant's belief as to the necessity of the spanking as of the time he spanked the children. The bill of exceptions testimony contains opinions of Dr. Blakeman as to the postspanking effects of the occurrence and the criminal prosecution of appellant on the children and the family. The excluded testimony does not address either the ser-

iousness of the bruises or appellant's beliefs, at or prior to the time of the spanking, as to the necessity of the discipline.

Testimony as to effects of the spankings on the children and the family after the spankings took place is not relevant to whether appellant caused bodily injury to the children, as that term was defined by the trial court's charge to the jury. Nor is such testimony as to later events relevant to the reasonableness of the beliefs held by appellant at the time he administered the spankings. The trial court did not abuse its discretion in excluding the testimony in question. Without addressing the State's contentions as to Dr. Blakeman's qualifications to give the excluded opinions and as to appellant's failure to preserve error, we overrule appellant's third issue.

### C. Analysis—Testimony of Richard Wall, Ph.D.

■■■ On a bill of exceptions outside the presence of the jury, Dr. Richard Wall testified that he is a licensed and certified psychologist and evaluates Child Protective Service's (CPS) cases regularly. Dr. Wall reviewed various documents concerning the case, including the CPS reports, a report prepared by Brenda Wilbanks, Ed.D., evaluating Mrs. Assiter and the children, and a psychological evaluation of appellant prepared by Philip J. Davis, Ph.D. Dr. Wall met with and interviewed appellant and his family on May 26, 1998. Dr. Wall was asked, and gave his opinion in regard to, whether the children were abused by appellant by the spanking in question. He also testified that in his opinion: (1) the father made some mistakes in disciplining the children, but appellant was not abusive, nor were the children abused; (2) historically, the prevailing belief was that if corporal punishment was to be used in dealing with children, that "very significant corporal punishment" should be used; (3) appellant was repeating the kinds of rearing mistakes which were visited upon him, but he was quite capable of dealing with the children differently; (4) appellant loved his children and believed that the spankings were a reasonable method to discipline the children; (5) appellant was not an abusive parent, and the children were not abused by the spankings of August 27, 1997; and (6) he recommended that appellant return to the family home for the benefit of the children. Appellant's bill of exceptions included Dr. Wall's testimony as well as the reports and documents he reviewed in reaching his opinions.

Appellant urges that the trial court erred in excluding all of Dr Wall's testimony from the guilt-innocence phase of trial because the testimony would have assisted the jury in determining (1) the facts and circumstances surrounding the spanking of the children; (2) the issue regarding knowledge, intent or reckless conduct of appellant in spanking the children; and (3) the issue regarding appellant's reasonable belief that the force was necessary to discipline the children.

The State responds by noting that Dr. Wall's testimony was cumulative because numerous witnesses, including appellant, testified to the relationship between appellant and his children and the circumstances surrounding the spankings. The State also notes that Dr. Wall's testimony was not shown to be either relevant to the issue of appellant's guilt, or scientifically reliable. Finally, the State urges that exclusion of the testimony was not harmful to appellant because of its cumulative nature.

In his brief appellant cites us to *Stanfield v. State,* 43 Tex. 167 (1875), for factors which he urges should be considered in determining the reasonableness of ap-

pellant's actions and the admissibility of Dr. Wall's testimony. In *Stanfield*, the guardian of a child was convicted for aggravated assault for striking the child. The Court observed that one of the relevant issues was whether the guardian inflicted moderate punishment upon the child. The Court explained:

> It is true that the law has not laid down any fixed measure of moderation in the lawful correction of a child, nor is it practicable to do so. Whether it is moderate or excessive must necessarily depend upon the age, sex, condition, and disposition of the child, with all the attending and surrounding circumstances, to be judged of by the jury, under the directions of the court as to the law of the case.

*Id.* at 168.

The language of former article 1014 of the Texas Penal Code [6] was similar to the language used by *Stanfield* concerning moderate correction of a child. Under former article 1014, then subsequently article 1142, a parent, guardian, or teacher could use force against a child in the exercise of moderate restraint or correction. *See* PENAL CODE 1911, art. 1014; PENAL CODE ANN. 1925, art. 1142. In determining what degree of force was moderate, courts applied factors referred to in *Stanfield* (age, sex, condition, and disposition of the child). *See Eitel v. State*, 78 Tex.Crim. 552, 182 S.W. 318, 321 (App.1916); *Ely v. State*, 68 Tex.Crim. 562, 152 S.W. 631, 632 (App.1912).

In 1974, the phrase "moderate restraint or correction" was eliminated from the

statute. The phrase "when and to the degree the actor reasonably believes the force is necessary to discipline the child or to safeguard or promote his welfare," was added.[7] Thus, current statutory law specifies that parents are permitted to use the disciplinary force that an ordinary and prudent person would use under the same circumstances as the parent. *See* §§ 1.07(42), 9.02, 9.61(a); *Teubner*, 742 S.W.2d at 59. Given the language of the statute under which appellant was indicted, appellant's reliance on *Stanfield* is misplaced.

Appellant further relies on *Moore v. State*, 836 S.W.2d 255 (Tex.App.—Texarkana 1992, pet. ref'd), and asserts that Dr. Wall's testimony was admissible as to whether appellant possessed the culpable mental state to injure the children. In *Moore*, a policeman responded to a family disturbance call, then observed the defendant driving a vehicle while allegedly intoxicated. The defendant was placed in the rear of a patrol car, and he subsequently caused damage to the car when he kicked the rear windows. Moore maintained that he was not intoxicated and did not intend to damage the patrol car because he was "hot as blazes" after spending approximately fifty minutes in the car and believed that it was necessary to break out of the car in order to save his life. *Id.* at 257–58.

The trial court excluded the testimony of Moore's expert, who specialized in osteopathy and worked in an emergency room. The expert testified that certain medical conditions produce symptoms similar to intoxication and that a person suffering

---

6. *See* Penal Code § 9.61(a).

7. In 1979, § 22.04 (Injury to a Child) was amended to include "bodily injury" to the list of offenses. Prior to amendment of § 22.04, bodily or mental injuries had to be "serious" in order for an offense to occur under

§ 22.04. *See Pickering v. State*, 596 S.W.2d 124, 128 (Tex.Crim.App.1980) (bruises that would eventually heal and a burn that would not result in scarring were not considered serious bodily injuries as defined by the Penal Code).

from a severe anxiety attack could have tried to kick out a car window without intending to do so. *Id.* at 258. The trial court was held to have abused its discretion in excluding the expert's testimony because the expert's specialized knowledge would have assisted the jury in determining whether, due to his physical and mental condition, the defendant had the intent to commit the crime. *Id.* at 259. However, appellant's capacity to form an intent to cause bodily harm to the children is not at issue, as was the defendant's capacity in *Moore.* We do not find *Moore* controlling of our decision.

The jury heard directly from appellant what he intended when he spanked the children. Neither appellant nor anyone else contended that the spankings did not cause pain to the children. Appellant affirmed that he intended to cause the children to suffer pain to some extent. From our brief outline of the evidence, it is clear that the jury heard about the spankings and surrounding circumstances from the witnesses with direct, firsthand knowledge of the event. Dr. Wall's testimony would not have assisted the jury by adding to or negating any of such firsthand testimony. And, even if the standard of what discipline, if any, a reasonable person would have considered necessary for the children under the circumstances was a subject on which expert testimony could have aided the jury, a question which we do not decide, Dr. Wall's testimony did not set such a standard. *See Honeycutt,* 24 S.W.3d at 360; *Alvarado,* 912 S.W.2d at 215–16; *Duckett,* 797 S.W.2d at 914. His conclusion that appellant did not "abuse" the children was offered without any attempt to define the term "abuse." The court's charge did not use the term "abuse" nor did it define the term for the jury. The jury was not charged to find whether the children were abused or bruised. Dr. Wall's testimony that appellant did not

intend to abuse or bruise his children was not relevant to appellant's guilt or innocence of the crime for which appellant was on trial. Dr. Wall's opinion that appellant was repeating "rearing mistakes visited on him," and testimony that "historical beliefs" were to the effect that if corporal punishment was used with children, the punishment should be very significant, did not address what force a reasonable person would have believed was necessary to discipline the children under the circumstances present on August 27, 1997. Nor was his opinion that the children would benefit from appellant returning to the home following the spankings relevant to appellant's guilt or innocence.

After carefully reviewing the bill of exceptions, we conclude that the testimony of Dr. Wall was not relevant to, nor would it have assisted the jury in deciding the issues submitted to it. *Honeycutt,* 24 S.W.3d at 360; *Alvarado,* 912 S.W.2d at 215–16; *Duckett,* 797 S.W.2d at 914. Additionally, after examining the record as a whole, we have fair assurance that exclusion of the testimony did not have a substantial and injurious effect or influence in determining the jury's answers to the charge submitted by the trial judge. *See* Tex.R.App.P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). The decision of the trial judge to exclude the testimony of Dr. Wall from the guilt-innocence stage of trial was not a clear abuse of his discretion. *Alvarado,* 912 S.W.2d at 215–16. Because exclusion of the testimony of Dr. Wall was not error, the trial judge did not commit error in excluding the facts or data underlying his opinions. *See* Tex.R.Evid. 705 (expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data). We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's four issues, we affirm the judgments of the trial court. Tᴇx.R.Aᴘᴘ.P. 43.2(a).