Opinion Issued December 6, 2007






Opinion Issued December 6, 2007

  

 

 

 

 

 




 

 

 

 

 




 

 

In The

Court of Appeals

For The

First District of Texas

  




 

 

 

 



 




 

 

 



 

 




 






NO. 01-06-01078-CR
  



 

 

 

 



 




 

 

 



 

 




 



 

 

 

 






MARLA ANNETTE JONES, Appellant
  
V.
  
THE STATE OF TEXAS , Appellee
  



 

On Appeal from the 400th District Court
<st1:City w:st="on">Fort Bend County, Texas
Trial Court Cause No. 42143
  





 

MEMORANDUM OPINION
A jury convicted appellant, Marla Annette Jones, of causing bodily injury to a child. 
See Tex. Pen. Code Ann. § 22.04.  The trial court sentenced her to a suspended
sentence of two years’ confinement and placed her on community supervision.  The
trial court also instructed Jones to complete domestic violence counseling and
parenting classes.  In two issues, Jones contends that the evidence is legally and
factually insufficient.  We affirm.
Background
          On January 19, 2005, Jones drove her nine-year-old daughter, Q.J., along with
her other two daughters, to the school bus stop.  Q.J. “had an attitude” that morning,
and dragged her jacket on the ground as she walked to the bus.  Jones instructed her
to stop dragging her jacket, and then followed Q.J. onto the bus, where she saw Q.J
throw her jacket on the floor.  Jones ordered Q.J. off the bus, and she drove Q.J. back
to the family’s apartment, where she proceeded to whip Q.J. with a belt.  Q.J. testified
that Jones struck her between twenty and thirty times with the belt.  
          After the whipping, Jones drove Q.J. back to her elementary school.  As Jones
walked Q.J. into the school, a boy in Q.J.’s class walked by and teased her. After Q.J.
became upset and yelled at the boy, Jones told Q.J. that she was going to take her
home and whip her again.  Robin Gray, a teacher at the school, testified that she heard
Jones tell Q.J. that she was going to “take her home and beat her ass all day.”  Gray
and other teachers agreed that they should call Children’s Protective Services (“CPS”)
and report the incident.
          When Q.J. and her mother arrived back at the apartment, Jones told her to
remove her clothes and proceeded to whip her again with a belt.  After this second
whipping, Jones drove Q.J. back to school, and met with the assistant principal to
describe Q.J.’s behavior problems that morning.  Jones arrived in the assistant
principal’s office wearing the belt draped around her neck.  
Gray was in the assistant principal’s office at the same time and saw Q.J. crying
hysterically.  When Gray tried to hug Q.J., Q.J. screamed in pain, and Gray took Q.J.
to the school nurse. The nurse saw a total of six bruises on Q.J.’s arms, back, and
thighs and testified that Q.J. appeared to be in pain.  She did not think that Q.J.’s
injuries required treatment by a physician, so she put ice packs on Q.J.’s bruises and
made a referral to CPS.  
          That day, Marshia Cox, an investigator from CPS, took Q.J. and her two sisters
from school to the CPS office, where a child forensic interviewer questioned them.
 Cox then met with Jones and recommended that she take a parenting class, and
although Jones agreed at the time, she never took a class.  Cox stated that Q.J.’s
whippings gave CPS reason to believe that Jones’s actions constituted physical abuse
of a child, but CPS allowed Q.J. and her sisters to return home with Jones that
evening.  
Sufficiency of the Evidence
          Jones asserts that the evidence was legally insufficient to show that she acted
in a manner that an ordinary and prudent person in her circumstances would believe
to be unreasonable. She further asserts that the evidence was factually insufficient to
allow a rational trier of fact to find beyond a reasonable doubt that she committed the
offense. 
Standard of Review
          When conducting a legal sufficiency review, we view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. 
<st1:City w:st="on">Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Drichas v. State, 175 S.W.3d 795, 798 ( Tex. Crim. App. 2005).  We do not
resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this was the function of the trier of fact.  See Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991).  Instead, our duty is to determine whether both the explicit and implicit
findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict.  Adelman, 828 S.W.2d at 422.  In so doing,
we resolve any inconsistencies in the evidence in favor of the verdict.  Matson, 819
S.W.2d at 843.
          When evaluating factual sufficiency, we consider all the evidence in a neutral
light to determine whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Watson v. State, 204 S.W.3d 404, 414 ( <st1:State w:st="on">Tex.
Crim. App. 2006).  We will set the verdict aside only if (1) the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the
great weight and preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11
( <st1:State w:st="on">Tex. Crim. App. 2000).  Under the first prong of Johnson, we
cannot conclude that a verdict is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury.  Watson, 204 S.W.3d at 417.  Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict.  <st1:State w:st="on">Id. 
Before finding that evidence is factually insufficient to support a verdict under the
second prong of Johnson, we must be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the jury’s
verdict.  <st1:State w:st="on">Id.  We must also discuss the evidence that, according
to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d
600, 603 ( Tex. Crim. App. 2003).
Bodily Injury to a Child
          A person commits the offense of bodily injury to a child if he intentionally,
knowingly, recklessly, or with criminal negligence, causes the child bodily injury.
Tex. Pen. Code Ann. § 22.04(a)(3) (Vernon 2005).  “Child” is defined as a person
fourteen years of age or younger.  <st1:PersonName w:st="on">Id. § 22.04(c)(1). 
“Bodily injury” means physical pain, illness, or any impairment of physical
condition.  <st1:State w:st="on">Id. § 1.07(a)(8).  
Injury to a child is a result-oriented crime; that is, “the accused acts with intent if it
is his conscious objective or desire to cause the result.”  Assiter v. State, 58 S.W.3d
743, 748 ( Tex. App.—Amarillo 2000, no pet.) (citing Alvarado v. State, 704 S.W.2d
36, 39 (Tex. Crim. App. 1985)); see also Dues v. State, 634 S.W.2d 304, 305 (Tex.
Crim. App. 1982).  “Intent may be inferred from the acts and the words of the
accused, as well as the surrounding circumstances.”  Assiter, 58 S.W.3d at 748.
          At trial, Jones raised the parental justification defense, which provides that the
use of force, but not deadly force, against a child younger than the age of eighteen is
justified “to the degree that the actor reasonably believes the force is necessary to
discipline the child or to safeguard or promote his welfare.”  Tex. Pen. Code Ann. §
9.61(a)(2).   “Reasonable belief” is “a belief that would be held by an ordinary and
prudent man in the same circumstances as the actor.”  <st1:PersonName
w:st="on">Id. § 1.07(a)(42).  The use of force is not justified simply because a parent
subjectively believes that the force is necessary; it is justified only if a reasonable
person in the same situation would have “believed the force was necessary to
discipline the child or to safeguard or promote the child’s welfare.” Assiter, 58
S.W.3d at 748 (citing Teubner v. State, 743 S.W.2d 57, 59 (Tex. App.—Houston
[14th Dist.] 1987, pet. ref’d));Quattrocchi v. State, 173 S.W.3d 120, 122 (Tex.
App.—Fort Worth 2005, pet. ref’d).  Therefore, we weigh the actions of the defendant
using an objective standard. See Quattrocchi, 173 S.W.3d at 122.  
The parental justification defense is not an affirmative defense; rather, the State has
the burden of negating the defense.  See Assiter, 58 S.W.3d at 746–47.  Thus, legally
sufficient evidence exists if, after viewing the evidence in the light most favorable to
the verdict, a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt, and also could have found beyond a reasonable
doubt against the defendant on the defense issue.  <st1:State w:st="on">Id. at 748;
Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).
  
Legal Sufficiency
          Jones asserts that the evidence is legally insufficient, because a rational trier of
fact could not have found beyond a reasonable doubt that the force she used was
unreasonable.  
The jury saw pictures of bruises on Q.J.’s arms, legs, and back, where Q.J. said she
was struck by Jones.  A teacher at Q.J.’s school heard Jones threaten Q.J. by stating
that she planned to “beat her ass all day.”  Q.J. reported that Jones struck her twenty
to thirty times with a belt during the first assault. During the second assault, which
occurred after Jones ordered Q.J. to remove all her clothing except for a bra and
panties, Jones struck Q.J. almost ten times on her back, arms and legs with a belt.  
Q.J. was visibly in pain after the whippings, crying hysterically. 
Viewing the evidence in the light most favorable to the verdict, a rational jury could
have found the essential elements of the crime beyond a reasonable doubt thereby
rejecting Jones’s justification of the use of force by a parent for reasonable discipline.
We therefore hold that the evidence is legally sufficient to support the verdict.
Factual Sufficiency
Jones does not contest that she intentionally and knowingly caused bodily injury to
Q.J.  Rather, she contends that the evidence is factually insufficient for the jury to
have rejected the parental justification defense, and that “the physical impairment
sustained by Q.J. was what one would expect to logically occur from corporal
punishment, a legally recognized form of parental discipline.” 
Jones asserts that the evidence is “factually insufficient to show that the appellant
acted in a manner contrary to her subjective belief that the discipline that she imposed
on Q.J. was reasonable.” Contrary to this assertion, the jury’s verdict is based upon
what an ordinary person considers reasonable to discipline a child in similar
circumstances, and not what the defendant subjectively believed was reasonable.See
Assiter, 58 S.W.3d at 748; see also Quattrocchi, 173 S.W.3d at 122.
Jones contends that any “physical impairment was so minor that the child required no
medical treatment other than ice packs, any bruising or redness was gone within
twenty-four hours, and Children’s Protective Services saw no danger in returning Q.J.
to the custody of the appellant the same day of the incident after reviewing her style
of discipline.”  Jones testified that she believed that the degree of force used was
necessary to discipline Q.J., and that she wants to give Q.J. a proper upbringing to
prevent Q.J. from failing in life.  She also testified that the reason that she made Q.J.
remove her clothes was because Q.J. was wearing two pairs of pants, and she
intended the whippings to hurt. Jones testified that she told Q.J. that she would stay
home all day, not that she was going to beat her all day.
Some of Q.J.’s testimony also supports Jones’s position that the physical
confrontation was reasonable discipline.  Q.J. testified that her behavior on the day
of the whipping was below the standard that her mother expected, that she understood
that the purpose of a whipping is to encourage a child to behave properly, and that
Jones had instructed her that if she behaved she would not get
whippings. Furthermore, although she testified that Jones struck her twenty to thirty
times during the first whipping, Q.J. also stated that the first whipping only lasted a
few seconds.  Q.J. further testified that Jones struck her less than ten times during the
second whipping, and the reason that she was struck on her back, arms, and legs was
because she was moving in the bed and running around.
          Other evidence refutes Jones’s contention that the physical confrontation was
reasonable discipline.  In portions of her testimony, Q.J. testified that she was scared
when she was riding in the car from the bus stop to the apartment right before her first
whipping. Although Jones testified that she gave the girls whippings less than once
a year, Q.J. testified that as soon as she returned home, she knew to go upstairs to her
mother’s room and lie face-down on the bed, without Jones telling her to do so. 
When Jones instructed Q.J. to take off her clothes before the second whipping, Q.J.
testified that she was more frightened than before the first whipping and that it hurt
even worse than the first whipping.  Q.J. also testified that she told the child forensic
interviewer at CPS that she did not want to go home that night because she didn’t
want to get whipped again.    
Several witnesses testified to Jones’s behavior on the day of the incident. Roberts, a
teacher at Q.J.’s school, testified that she observed Jones and Q.J. as they were
walking away from the cafeteria, that she heard Jones tell Q.J. that she was going to
“break [her] back” and “kick [her] ass” and that this language shocked her.  She also
testified that Q.J. seemed frightened when Jones was making these statements to her.
 Gray testified that she observed Jones’s behavior when Jones and Q.J. were leaving
the school before the second whipping, and Jones’s comments were “very alarming”
to her.  
Pictures documented bruises to Q.J.’s arms, legs, and back, where Q.J. said she was
struck by Jones.  Q.J. reported that Jones struck her twenty to thirty times on her arm,
back and buttocks with a belt during the first assault and almost ten times on her
back, arms and legs with a belt during the second assault while Q.J. wore only a bra
and panties, having disrobed at Jones’s request.   Q.J. was in pain after the whippings,
crying hysterically. 
The fact-finder is the exclusive judge of the witnesses’ credibility and the weight to
be given to their testimony.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). As an appellate court, we must avoid re-weighing the evidence and
substituting our judgment for that of the fact-finder. Johnson v. State, 967 S.W.2d
410, 412 (Tex. Crim. App. 1998);see also King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000); Wilson v. State, 863 S.W.2d 59, 65 (Tex.Crim. App. 1993).  A
rational jury could have determined beyond a reasonable doubt that an ordinary and
prudent person in the same circumstances as Jones would not have disciplined Q.J.
by using a belt to repeatedly whip her on her arms, back and buttocks, leaving
multiple visible bruises.  The jury’s decision to reject the justifiable force conclusion
is not against the great weight and preponderance of the evidence so as to be
manifestly unjust.  We hold that factually sufficient evidence supports the verdict.
Conclusion
          We hold that the evidence is legally and factually sufficient to support the
conviction.  We thus affirm the judgment of the trial court.
  
 
 
Jane Bland
Justice.
  
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish.  SeeTex. R. App. P. 47.2(b) .