

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00055-CR

_____

JOHN BOZEMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 349th Judicial District Court
Houston County, Texas
Trial Court No. 08CR-042

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

John Bozeman was indicted for the theft[1] of nine pieces of jewelry from Cathy Hobson. After a bench trial, Bozeman was found guilty and was sentenced to eighteen months' imprisonment in the Texas Department of Criminal Justice–State Jail Division.[2] On appeal, Bozeman claims that (1) the judgment is not supported by constitutionally sufficient evidence; and (2) the judgment is not supported by appropriate evidence of the value of the items alleged to have been stolen. We affirm the judgment of the trial court.

## I.    BACKGROUND

Bozeman and Hobson went to school together and have known each other most of their lives. In July 2006, when Hobson was preparing to move from a small house to a larger house next door, Bozeman offered the use of his truck and trailer to assist in the move. The moving process commenced on Monday, July 17.[3] Hobson testified that on that date, Bozeman moved both of her jewelry boxes from the smaller house to the upstairs bedroom of the larger house. Bozeman was aware of the location of the jewelry boxes because Hobson directed him to place

---

[1]TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2010).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]Others helped with the move; Hobson hired Consuelo Venezuela and Christopher Lopez to help pack. Bozeman testified that Donald Davis accompanied him to Hobson's house to assist with the move.

them in a drawer next to her bed. At that time, there was nothing missing from either of the jewelry boxes.[4]

On the second day of the move, Tuesday, July 18, Bozeman asked Hobson to take her son to a babysitter, as Bozeman could not get any work done with the child underfoot. Hobson agreed and took her son to a friend's house a few blocks away. Hobson returned approximately forty-five minutes later, only to find that Bozeman was gone. Baffled by his disappearance, Hobson called Bozeman on his cell phone only to be told that he was at Lowe's in Palestine purchasing a lawn mower for his father.[5]

When Hobson's husband arrived home from work on the evening of July 18, Hobson showed him what had been accomplished at their prospective new home. When Hobson noticed that an antique music box and an antique adding machine[6] were both missing, she immediately went upstairs to check her jewelry boxes. Hobson discovered that some of her jewelry was missing and filed a report with the local police that same evening. Hobson never questioned Bozeman about the missing items of jewelry, as she suspected he was responsible for their disappearance.

Approximately three weeks later, when Hobson learned Bozeman was having work done on one of his rings at Charles Dickens' jewelry store in Palestine, she paid a visit to Dickens.

---

[4]Bozeman claims that he never saw a jewelry box while assisting with the move.

[5]According to Bozeman, Hobson was aware of his appointment with the manager at Lowe's on July 18.

[6]Bozeman was not charged with the theft of these items.

After having been presented with a copy of the police report, Dickens agreed to show Hobson several items of jewelry Bozeman brought to the store. Hobson identified nine of those items of jewelry as belonging to her. At trial, Dickens testified that Bozeman brought those nine items of jewelry into his store on July 19, 2006, the day after Hobson's jewelry was reported missing. Bozeman denies any involvement in the disappearance of Hobson's jewelry; the jewelry boxes were dusted for fingerprints, but no discernible prints were obtained.

## II. The Evidence Is Legally Sufficient to Support the Finding of Unlawful Appropriation

In his first point of error, Bozeman generally claims the evidence is legally insufficient to support the trial court's verdict. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (4-1-4 decision) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

4

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7] The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* This standard ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge submitted. *Id.* This standard also applies to bench trials. *Id.*

### A.    Appropriation of Property

The first issue is determined by an analysis of the evidence to determine if it is sufficient to justify finding that Bozeman appropriated the property. Bozeman points to his own testimony, which accounts for his acquisition of the jewelry in question from sources other than Hobson. First, Bozeman maintains that he purchased two of the items of jewelry at a pawn shop in Crockett. The record is not clear as to which two items Bozeman claims were so purchased. John Smock, the owner of the pawn shop in Crockett, testified that he has known Bozeman for fifteen years and that Bozeman has purchased several pieces of jewelry from Smock over the years, similar to the

---

[7]Even though this was not a jury trial, we nevertheless employ this analysis to determine the legal sufficiency of the evidence. *Malik*, 953 S.W.2d at 240 (the *Malik* test applies to nonjury or bench trials).

5

rings depicted in State's exhibit seventeen (a photograph of the nine items of jewelry located in Dickens' jewelry store). Next, Bozeman testified that the coin he is accused of stealing from Hobson (actually a .5-ounce coin, rather than a 5-ounce coin) was given to him by his father, Charles Bozeman. Charles testified that he purchased a 2000 Liberty gold coin for Bozeman in March 2001. Bozeman testified that the wedding band (otherwise not identified) was given to him by his father as well when his father outgrew it.

Bozeman contends that the remaining five items of jewelry he was convicted of stealing from Hobson were items he purchased from a man by the name of Dennis Denby. Bozeman maintains that Denby sold the items for Otis Johnson, who needed the money to pay his electric bill. Denby testified that in early August 2006, he introduced Bozeman to a man that had some jewelry to sell. Denby took the man (identified by Bozeman as Johnson) to Bozeman, who purchased the jewelry. Bozeman introduced a sales receipt at trial for these five items, dated August 7, 2006. According to Bozeman, Denby signed the receipt "Dennis Denby sold for Otis Johnson" on the date of the transaction. Denby testified that Bozeman approached him a few days after the sale and asked him to sign the receipt.

Bozeman maintains on appeal that the weakness of the State's evidence, in conjunction with the evidence accounting for Bozeman's legal acquisition of the jewelry, can lead only to the conclusion that the evidence failed to establish Bozeman's guilt beyond a reasonable doubt. He complains that the State's evidence is largely circumstantial and that it failed to eliminate any other

6

reasonable alternative, such as the sale of the jewelry to Bozeman by a third party.[8] The lack of direct evidence is not dispositive of the issue of Bozeman's guilt. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Further, the standard of review on appeal is the same for both direct and circumstantial evidence cases. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

As a reviewing court, it is our job to view the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. Further, we defer to the finder of fact to resolve conflicts in the evidence and to determine the credibility of that evidence. Here, the trial court was free to believe Hobson's testimony and to discount the testimony of Bozeman and Denby. Given the fact that Dickens testified that Bozeman brought all nine pieces of jewelry into his store on July 19, and the receipt for the sale of five items of jewelry shown to have been purchased by Bozeman was signed on August 7, it appears that this is exactly what the trial court did. In viewing the evidence in the light most favorable to the trial court's verdict, a rational fact-finder could have found that Bozeman unlawfully appropriated jewelry belonging to Hobson.

---

[8]In *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), the Texas Court of Criminal Appeals expressly disavowed the "reasonable hypothesis analytical construct" for legal sufficiency reviews.

## B.     Effective Consent

The indictment states, in pertinent part, that John Bozeman:

[O]n or about July 18, 2006 and before presentment of this Indictment, in said County and State, did then and there: unlawfully appropriate, by acquiring or otherwise exercising control over, property, to-wit: Men's Yellow/gold 3 stone wedding band, small yellow solitaire ring, Men's nugget solitaire ring, 3.7mm wedding band, Ladies 3 stone with sapphire accent ring, lady's 2 tone engagement ring, w/3 stones, Yellow gold coin ring w/3 stones, 5oz gold eagle coin, Gold watch chain and faub [sic], of the value of $1,500 or more but less than $20,000, from Cathy Hobson, the owner thereof, without the effective consent of the owner, namely, by deception, and with intent to deprive the owner of the property.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson*, 443 U.S. 313. Bozeman contends that because the indictment alleged only one means of committing theft—by deception—the State was required to prove that particular means. Bozeman argues that because there is no evidence of deception, the evidence is legally insufficient to sustain his conviction. The State maintains that it proved theft by deception as alleged in the indictment. Even though neither party argues the effect of applying the hypothetically correct jury charge analysis to the facts, we must do so in determining the sufficiency of the evidence. *Malik*, 953 S.W.2d at 240.

A person commits the offense of theft if he or she unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03. The gravamen of the offense is the unlawful acquisitive conduct. To constitute an offense, the appropriation must be accompanied by the specific intent to deprive the owner of the property. Appropriation is

8

unlawful based on the circumstances surrounding the conduct—that the actor knew it to be without the owner's effective consent. *Mills v. State*, 722 S.W.2d 411, 415 (Tex. Crim. App. 1986).

Consent means "assent in fact whether express or apparent." TEX. PENAL CODE ANN. § 1.07(a)(11) (Vernon Supp. 2010). In the classical theft case, the proof from the owner is that he or she did not consent to the accused's taking the property; Hobson testified that she never consented to Bozeman taking her property. But Bozeman argues that evidence is not sufficient, and the State must also prove that Bozeman acted with deception. If property is taken by deception, even if taken with the owner's consent, that deception renders the owner's consent ineffective. Typically, this occurs in a contractual matter where one party consents to the other receiving the property, but alleges that consent was gained by false promises and the like. *See* TEX. PENAL CODE ANN. § 31.01(1)(A) (Vernon Supp. 2010).

We must determine if proof of deception is an alternative method of a manner and means of committing an element of an offense of theft; if the indictment alleges only one manner or means in the indictment, it is "the law" for purposes of the hypothetically correct charge. *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001) (citing *Curry v. State*, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000)). Elements of the offense means: (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of an exception to the offense. TEX. PENAL CODE ANN. § 1.07(a)(22) (Vernon Supp. 2010).

With this in mind, we examine the elements of the offense and the alternatives of theft.

The hypothetically correct jury charge requires the following elements and statutory alternatives in the indictment that must be proved:

(1)     "A person"—Bozeman—31.03(a)
(2)     appropriated property—31.03(b) (the act of appropriation)
      definitions of appropriate:
      a.     not applicable 31.01(4)(A) or
      b.     acquired or otherwise exercised control over property other than real property
      (in this case, the described jewelry)
(3)     Unlawfully (the character of appropriation)
      a.     without the owner's effective consent—31.03(b)(1)
      b.     not applicable—31.03(b)(2) (stolen property)
      c.     not applicable—31.03(b)(3) (property in custody of law enforcement)
(4)     With intent to deprive the owner of the property (required culpability).

"Deprive" is defined as:

A.     to withhold property from the owner permanently or for so extended a period of time that a major portion of the value of the property is lost to the owner—31.01(2)(A)
B.     not applicable—31.01(2)(B)
C.     not applicable—31.01(2)(C)

Direct evidence or evidence from which logical inferences may be found was presented on each required element of the offense as follows:

(1)     Bozeman—a person
(2)     appropriated the described jewelry by acquiring or exercising control of it (forbidden conduct)
(3)     Without Hobson's effective consent—a circumstance surrounding the conduct and making the appropriation unlawful
(4)     With intent to deprive—to withhold the jewelry so that the value was lost to the owner (required culpability).

The State is required to prove beyond a reasonable doubt that the appropriation of the property was unlawful, which may be accomplished by evidence in one of three ways: (1) without the effective consent of the owner; (2) property is stolen and the actor appropriates it knowing it was stolen; or (3) property was in the custody of law enforcement . . . . TEX. PENAL CODE ANN. § 31.03(b)(1)–(3). These are the alternative methods of proving the appropriation is unlawful. Since the State alleged only that the unlawful character of the appropriation was that it was accomplished "without the owner's effective consent," that is the alternative means the State must prove.

The evidence showed that Hobson did not consent to Bozeman taking the property. "Consent" means assent in fact, whether real or apparent. TEX. PENAL CODE ANN. § 1.07(a)(11). If the evidence shows the owner did not give any form of consent, that necessarily is evidence that the owner did not give "effective consent." "Appropriation of property" is "without the owner's effective consent" if either (1) it is without his or her "assent in fact" or (2) his or her "assent in fact" is rendered ineffective by one or more of the circumstances listed at Texas Penal Code Section 31.01(4), including "deception." *Thomas v. State*, 753 S.W.2d 688, 692 (Tex. Crim. App. 1988).[9]

---

[9]Before the introduction of the hypothetically correct jury charge doctrine, courts considered these questions under the surplusage theory. Generally, the question was whether the indictment gave proper notice of the offense. In this area, *Thomas* held that in a common theft case (no assent), it was proper to merely plead lack of effective consent. In such an instance, consent depends entirely on the owner's state of mind. But when the State relies on a defendant's act or omission to negate consent, the indictment must allege which of the statutory negatives vitiated consent. *Geter v. State*, 779 S.W.2d 403, 407 (Tex. Crim. App. 1989).

Section 31.01(3) sets out several instances of events (including the actor's deception) that demonstrate consent is not effective. So if a victim gave some form of consent, the defendant's deception may be used to show that the consent given was not effective. The statutory alternative element the State must prove is that the appropriation was without effective consent. Acting with deception is not an alternative manner of committing theft, but is one way in which to prove that the consent given was not effective. *See Milton v. State*, 652 S.W.2d 958, 959 (Tex. Crim. App. 1983) ("The method or means by which a defendant unlawfully appropriates property is not an element of the offense of theft under § 31.03, supra, and it need not be included in the paragraph applying the law to the facts."); *Harmon v. State*, 889 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

"When relevant at all in a prosecution for theft, however, 'deception' goes to 'circumstances surrounding the conduct' of the accused, in that deception operates to render otherwise apparent consent 'ineffective.' Sec. 31.01(4)(A) . . . . But the deception is not of itself 'forbidden conduct' under Sec. 31.03, supra." *Mills*, 722 S.W.2d at 415;[10] *see Skillern v. State*, 890 S.W.2d 849, 871 (Tex. App.—Austin 1994, pet. ref'd).

The evidence was sufficient to prove that the appropriation of the jewelry was without the owner's effective consent.

---

[10]Judge Clinton, the author of the *Mills* opinion, later stated in a concurring opinion that a more precise statement is: "[w]hen relevant at all in a prosecution for theft, however, 'deception' goes to 'nature of conduct' and operates to render otherwise apparent consent 'ineffective' . . . . But the deception is not in itself the ultimate 'forbidden conduct' under Sec. 31.03, supra." *Cheney v. State*, 755 S.W.2d 123, 131 (Tex. Crim. App. 1988) (Clinton, J., concurring).

12

### C. Variance

The State alleged that Bozeman took the property without the effective consent of the owner, namely, by <u>deception</u>. The proof at trial was that Bozeman took the property without Hobson's assent in fact. Because we have concluded that allegation is not a statutory alternative element of the offense, we next turn to the question of whether that variance between what was alleged and what was proven requires reversal of the conviction. *See Cada v. State*, No. PD-0754-10, 2011 WL 409002, at \*5 (Tex. Crim. App. Feb. 9, 2011) (The Texas "immaterial variance" law as set out in *Gollihar* does not apply to the specific statutory elements of the offense alleged.") (citing *Smith v. State*, 135 S.W.3d 259, 262 (Tex. App.—Texarkana 2004, no pet.).

"A variance between the wording of an indictment and the evidence presented at trial is fatal only if 'it is material and prejudices [the defendant's] substantial rights.'" *Gollihar*, 46 S.W.3d at 257 (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000). If proof of deception is not a required element of the offense of theft and is not a statutory alternative manner or means of committing theft under the hypothetically correct jury charge, the variance is not necessarily reversible error. In such event, we consider whether the variance in the indictment and the evidence is a material variance. We measure the sufficiency of the evidence by the hypothetically correct jury charge, which need not incorporate allegations that give rise to immaterial variances. *Gollihar*, 46 S.W.3d at 256.

13

"The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Id.* at 246–47. In determining if the defendant's substantial rights have been prejudiced, we must consider two questions: (1) whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow the defendant to prepare an adequate defense at trial, and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.*; s*ee In re S.C.*, 229 S.W.3d 837, 841 (Tex. App.—Texarkana 2007, pet. denied); *Brown v. State*, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).

The record demonstrates that the indictment gave Bozeman adequate notice to allow him to prepare his defense. This case was not tried on the theory that Bozeman was allowed to take the property with Hobson's consent, obtained by his deceptive acts. Bozeman denied taking the property. He testified that the jewelry taken to the pawn shop was not Hobson's, but that he acquired the jewelry from another pawn shop, his father, and from Denby. The record affirmatively demonstrates that Bozeman did not attempt to argue that he ever had Hobson's permission to take it. Bozeman does not argue that he was surprised or hampered in preparing a defense, but merely argues the State presented no evidence of deception.

Further, we find there is no risk that Bozeman could be prosecuted again for appropriating the same property as that which was specifically described in the indictment. *Gollihar*, 46

14

S.W.3d at 258. We find the variance between the pleading and the evidence presented to be an immaterial variance and may be disregarded in applying the hypothetically correct jury charge to the issue of evidence sufficiency. *Id.* at 257.

We acknowledge that our sister court has held that when the indictment specifically alleged that the consent was induced by deception, the State was required to prove "that method of theft for conviction." *Geick v. State*, 321 S.W.3d 706, 710 (Tex. App.—Houston [14th Dist.] 2010, *pet. granted*, No. PD-1734-10 (Tex. Crim. App. Mar. 30, 2011), *available at* http://www.ccc.courts.state.tx.us/opinions/pdfOpinionInfo2.asp2OpinionID=20825. For reasons previously stated, we respectfully disagree that "deception" is a "method of theft" that must be proved in this situation.

## III.    Sufficient Evidence Supports the Value of the Stolen Jewelry

In his second point of error, Bozeman claims the value of the jewelry in question was not supported by sufficient evidence. The indictment alleges the value of the jewelry to be "$1,500 or more but less than $20,000." To prove the stolen property's value, the State offered Hobson's testimony. The State alleged in the indictment that Hobson was the owner of the stolen property. After testifying about how she acquired the jewelry, Hobson testified as follows:

> Q.    And based on your experience, these nine items, or even these -- let's say seven items, we'll exclude the gold coin with three stones, which doesn't exist, or the 5 ounce Eagle coin. Let's -- we're just looking at the other items?[11]

---

[11]Hobson explained in her testimony that the yellow gold coin ring described in the indictment as having three stones does not have three stones; rather, it has three coins. Hobson further explained that the gold eagle coin described in the indictment as weighing five ounces actually weighs a half ounce.

15

A.      Yes, sir.

Q.      Would the value of those item [sic] be less than 1,500 or more than 1,500?

A.      More.

Q.      Any particular item there that you would say it wouldn't even be worth a thousand on [sic] itself?

A.      The sapphire ring with the diamonds.

Q.      How much do you think it's worth?

A.      Minimum of about a thousand.

The State also sought to establish the stolen jewelry's value through the testimony of

Charles Dickens, the owner of Dickens' Jewelry store in Palestine for the past thirty years:

Q.      . . . . My understanding is that you've been asked in the past to give opinions on the value of pieces of jewelry for court cases.   Would that be true?

A.      Yes.

Q.      And let me ask you, looking at State's Exhibit 17,[12] of those items that had been in your possession at one time, just a ballpark figure, all total, would the value of those items be less or more than $1,500?

A.      It would be more.

Q.      And let me just exclude the gold coin from the list and also the ring with the gold coin attached to it.   Have you looked at those two?

A.      Yes.

---

[12]Exhibit 17 is a photograph of the nine items of jewelry listed in the indictment that Bozeman delivered to Dickens' Jewelry store.

Q.     Taking those two out, would your testimony remain the same that the value would be over $1,500?

A.     Yes.

"[W]hen the State seeks to establish the value of an item of property through the testimony of a non-owner[,] the witness must first be qualified as having personal knowledge of the value of the property." *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986). Yet, "[i]t has long been the rule in this State that the owner of property is competent to testify as to the [fair market] value of his own property." *Id.* Because such testimony is an offer of the owner's best knowledge of the value of his or her property, it "constitutes sufficient evidence for the trier of fact to make a determination as to value based on the witness's credibility." *Jones v. State*, 814 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (citing *Sullivan*, 701 S.W.2d at 909). Rebuttal of the owner's opinion evidence must be accomplished through the use of cross-examination and the offer of controverting evidence as to the value of the property. *Id.*

Here, Hobson was named as the owner in the indictment. Hobson offered testimony of her best knowledge of the value of her property. Such evidence is legally sufficient, the trier of fact having found Hobson's testimony to be credible. Further, Dickens was qualified as having personal knowledge of the value of the property—the property was in Dickens' possession, and he is well acquainted with the valuation of jewelry, having been in the jewelry business for thirty years. Neither Hobson nor Dickens was cross-examined on the value of the jewelry, and no

17

controverting evidence as to its value was offered.  We find the evidence of the value of the jewelry in question to be legally sufficient.   Bozeman's second point of error is overruled.

## IV.    CONCLUSION

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:      February 11, 2011
Date Decided:         April 8, 2011

Publish