ACCEPTED
06-15-00133-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
11/18/2015 3:17:35 PM
DEBBIE AUTREY
CLERK

**NO. 06-15-00133-CR**

IN THE COURT OF APPEALS FOR
THE SIXTH COURT OF APPEALS DISTRICT
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
11/19/2015 9:22:00 AM
DEBBIE AUTREY
Clerk

# BRANDON BERNARD BATTLE,

## Appellant

## v.

# THE STATE OF TEXAS,

## Appellee

## APPELLANT'S BRIEF

On Appeal from the 220th District Court
of Bosque County, Texas,
Trial Court Cause No. CR 14972

**E. Alan Bennett**
State Bar #02140700
Attorney for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas   76710
Telephone:  (254) 772-8022
Telecopier:  (254) 772-9297
Email:  abennett@slmpc.com

# Identity of Parties and Counsel

Appellant, pursuant to Rule of Appellate Procedure 38.1(a), provides the following list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel.

**THE DEFENSE:**

Brandon Bernard Battle                                    Appellant

Terence A. "Tiger" Russell                               Trial Counsel
P.O. Box 306
Hillsboro, Texas 76645

E. Alan Bennett                                      Appellate Counsel
510 North Valley Mills Drive, Suite 500
Waco, Texas 76710

**THE PROSECUTION:**

Adam Sibley                                  Trial & Appellate Counsel
Shaun Carpenter
Assistant District Attorneys

B.J. Shepherd
District Attorney
220th Judicial District
P.O. Box 368
Meridian, Texas 76665

# Table of Contents

Identity of Parties and Counsel ............................................................................ 2

Table of Contents ................................................................................................ 3

Index of Authorities ............................................................................................ 5

Statement of the Case ......................................................................................... 8

Statement Regarding Oral Argument ................................................................. 9

Issues Presented .................................................................................................. 9

Statement of Facts .............................................................................................. 10

Summary of the Argument .................................................................................. 21

Argument .............................................................................................................. 22

First Issue:   The evidence is legally insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.   ......................................................................................................... 22
  A. The Court Reviews the Evidence in a Light Favorable to the Verdict. ................................................................................................................. 22
  B. The Evidence Must Link the Accused to the Narcotics. ...................... 23
  C. The Evidence Does Not Link Battle to the Narcotics. ......................... 25
  D. The Court Must Reverse and Render a Judgment of Acquittal. ......... 29

Second Issue: The evidence is factually insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.   .......................................................................................................... 30
  A. The Court of Criminal Appeals is Reconsidering *Brooks* ..................... 30
  B. The Court Reviews the Evidence in a Neutral Light. ........................... 32
  C. The Evidence is Factually Insufficient to Link Battle to the Narcotics. ................................................................................................................. 33

D. The Court Must Reverse the Judgment and Remand for a New Trial. ..........................................................................................36

Third Issue: The judgment incorrectly recites that Battle was convicted of a first degree felony. ...................................................................37
   A. The Trial Court Must Enter a Proper Judgment.................................37
   B. No Objection is Required. ...............................................................37
   C. The Judgment is Not "Proper." .........................................................38
   D. This Court Must Correct the Judgment. ............................................39

Prayer ..................................................................................................40

Certificate of Compliance..................................................................41

Certificate of Service ........................................................................41

# Index of Authorities

## Texas Cases

*Anderson v. State*, 416 S.W.3d 884 (Tex. Crim. App. 2013)..............................23

*Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd).....38, 39

*Assiter v. State*, 58 S.W.3d 743 (Tex. App.—Amarillo 2000, no pet.) .32, 35, 36

*Bozeman v. State*, 340 S.W.3d 515 (Tex. App.—Texarkana), *rev'd on other grounds*, 353 S.W.3d 886 (Tex. Crim. App. 2011)...............................................23

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .......................30, 31, 32

*Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011) ......................................29

*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) ............................32, 36

*Cobb v. State*, 95 S.W.3d 664 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ....................................................................................................................38, 39

*Denny v. State*, No. 13-00-00510-CR, 2001 WL 34615524 (Tex. App.—Corpus Christi 2001, pet. ref'd) ........................................................................35, 36

*Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006) .................24, 25, 26, 34

*Garner v. State*, 214 S.W.3d 705 (Tex. App.–Waco 2007, no pet.) .............37, 39

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .....................................23

*Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) ..........................32, 33, 35

*Johnson v. State*, 419 S.W.3d 665 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) ....................................................................................................................31

*Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996).....................................33

*Lucio v. State*, 351 S.W.3d 878 (Tex. Crim. App. 2011) .....................................23

*Martin v. State*, 405 S.W.3d 944 (Tex. App.—Texarkana 2013, no pet.).........39

*Mitchell v. State*, 942 S.W.2d 170 (Tex. App.—Amarillo 1997, pet. ref'd)......37

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005)................24, 26, 34

*Stewart v. State*, No. 10-14-00183-CR, 2015 WL 3823273 (Tex. App.—Waco June 18, 2015, pet. filed) (mem. op., not designated for publication) ...........25

*Triplett v. State*, 292 S.W.3d 205 (Tex. App.—Amarillo 2009, pet. ref'd) ......................................................................................................................... passim

*Walker v. State*, No. PD-1429-14 (Tex. Crim. App. Oct. 14, 2015)...................31

*Ward v. State*, 48 S.W.3d 383 (Tex. App.—Waco 2001, pet. ref'd)......32, 33, 36

*White v. State*, 890 S.W.2d 131 (Tex. App.—Texarkana 1994, pet. ref'd).35, 36

## Texas Constitution

TEX. CONST. art. V, § 6 ................................................................................31

## Texas Statutes

TEX. CODE CRIM. PROC. art. 37.12 ................................................................37

TEX. CODE CRIM. PROC. art. 42.01, § 1(13) .................................................37

TEX. CODE CRIM. PROC. art. 44.25 ................................................................31

TEX. HEALTH & SAFETY CODE § 481.115 ..................................................8, 38

## Rules

TEX. R. APP. P. 41.3 ........................................................................................ 8

TEX. R. APP. P. 43.2 ...........................................................................29, 36, 39

## Statement of the Case

In a bench trial, the trial court, the Honorable Phil Robertson, judge of the 220th District Court of Bosque County, found Brandon Bernard Battle guilty of possession of one gram or more but less than four grams of methamphetamine. (CR 32-33), (RR[1] 180) *See* TEX. HEALTH & SAFETY CODE § 481.115(c). Battle pleaded "true" to enhancement allegations raising his punishment range to that for an habitual offender. (RR 181-82) The court sentenced Battle to twenty-five years' imprisonment. (CR 32-33), (RR 183) Battle timely filed a notice of appeal to the Waco Court of Appeals. (CR 41) Under a docket equalization order, the appeal was transferred to this Court.[2]

---

[1]    Because the second volume of the reporter's record contains only exhibits, counsel will refer in this brief to the first volume of the reporter's record as "RR" and will cite individual exhibits as necessary.

[2]    In accordance with Rule 41.3, this appeal should be decided in accordance with the precedent of the Waco Court of Appeals to the extent applicable. TEX. R. APP. P. 41.3. Accordingly, counsel provides citations to relevant decisions of the Waco Court (and of this Court) when available.

## Statement Regarding Oral Argument

Oral argument will not aid the Court's decisional process in this appeal.

## Issues Presented

First Issue: The evidence is legally insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.

Second Issue: The evidence is factually insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.

Third Issue: The judgment incorrectly recites that Battle was convicted of a first degree felony.

# Statement of Facts

*The Charges*

The indictment alleges that on or about February 5, 2014, Battle did:

> intentionally or knowingly possess a controlled substance, namely, Methamphetamine, in an amount of one gram or more but less than four grams.

(CR 5)

*The Trial Court Proceedings*

Battle and his trial counsel signed a written waiver of jury trial. (CR 29) The court admonished Battle regarding his right to a jury trial and determined that Battle knowingly and intelligently waived this right. (RR 8-11)

Clifton Police Chief Trace Hendricks has worked with confidential informants before on "numerous occasions." (RR 28) He explained that he met Misti Millican because of her involvement in an accident in which she had been a passenger but fled the scene. (RR 29) She came to the office to discuss the case. She explained that she had just bought narcotics before the accident and fled because she did not want to be caught with it in her possession. (RR 30)

Millican's name had come up in "numerous interviews with narcotics offenders" so Chief Hendricks asked her if she would work with the department as a confidential informant in exchange for some leniency on the evading case. She agreed to contact people she knew and try to arrange narcotics deals with them. (RR 31- 32)

One of those individuals was Battle, and he was arrested that afternoon. (RR 36-37) However, Chief Hendricks did not participate in the arrest or even write a report. (RR 39)

Misti Millican Black testified that, when she met with Chief Hendricks, she admitted that the driver and she had been transporting methamphetamine to a location in Clifton when they fled after the accident. (RR 47 When she agreed to work with the department, she made phone calls trying to arrange drug deals. She made these calls from her apartment and several officers were present when she made them. (RR 49)

Millican testified that she has known Battle as a narcotics dealer for about fifteen years. (RR 50) She had purchased from him before. When she called Battle, she wanted to ask him to bring her a sixteenth of an ounce of

methamphetamine which is also known as a "teener."[3] But Battle did not answer, so she called another dealer. Battle returned her call later. (RR 52) The second person she called came to her apartment first. They arrested him and hid him in the bathroom because Battle was on the way. (RR 54)

Millican never saw any narcotics in Battle's hand, but she claims that she saw him reach behind the television.[4] She insisted that she had no reason to hide any methamphetamine behind the television, nothwithstanding that she later testified she was using methamphetamine on a daily basis at that time. (RR 55, 61) Battle, however, insisted to the officers that he did not have any drugs, and if any drugs were found, they were Millican's. (RR 56)

Relying on cell phone records,[5] Millican identified the telephone calls and text messages she exchanged with Battle that afternoon. (RR 57-59) She testified that in their text messages, "I told him I wanted to purchase

---

[3]     Millican explained that a "teener" is 1.7 grams and costs $170. (RR 53)

[4]     Notwithstanding Millican's testimony, the video recording depicting the arrest shows that the officers tackled Battle before he even got to the television. (SX 1) The television is around the corner and to the right from the hallway depicted when the video begins. Thus, Battle had no opportunity to reach behind the television.

[5]     When the State later offered the phone records in evidence, Battle objected on the basis of hearsay, and the State withdrew the exhibit. (RR 102) However, Battle did not object to Millican's earlier testimony about the contents of the records.

methamphetamine and he had told me he was getting dressed." (RR 60) Millican was also arrested that day on a warrant for hot checks. (RR 61)

On cross-examination, Millican described how the officers looked through her apartment when they first arrived. (RR 64-66) She acknowledged that she had been previously convicted of burglary of a building in Hill County. (RR 71) Millican admitted to the officers (and the jury) that it was "a possibility" that the narcotics were hers. (RR 73-74) However, after seeing how the drugs were packaged, Millican claimed that they were not hers. She also admitted that she had sent a Facebook message claiming that the drugs were hers. She explained, however, that she did so because Battle had threatened to kill her and she feared for her life. (RR 74) She claimed that he made this threat to her in her living room after he was handcuffed that afternoon.[6] (RR 74-75)

Clifton Police Officer Darren Glenn[7] also met with Millican when she agreed to work with the department. (RR 79) When Millican talked on the

---

[6]    However, the video recording of the arrest and subsequent events does not contain any indication that Battle threatened her in any way. (SX 1)

[7]    At the time of trial, Officer Glenn was a deputy with the Bosque County Sheriff's Department. (RR 77)

phone that afternoon, she used the speaker phone setting. (RR 84) Officer Glenn recognized Battle's voice on the phone. (RR 85) He recalled that Battle agreed to bring Millican $170 worth of methamphetamine. (RR 87) He acknowledged that he conducted only a "cursory search" of the apartment's kitchen and living room area. (RR 90)

Battle knocked on the back door, and Millican let him in. She walked ahead of him as they went through the kitchen to the living room. They had a brief conversation, but Officer Glenn could not hear what was being said. When Battle looked down the hall, Officer Glenn thought he might see the officer operating the video camera, so he announced his presence and commenced to apprehend Battle. (RR 92) Officer Glenn tried to bear hug Battle. Other officers also grabbed him. "We slid across kind of a little table and a TV set there then lowered him to the floor." They did not locate any drugs on his person. He denied having brought anything with him. (RR 93)

A couple of minutes after Officer Glenn secured Battle, another officer (Deputy Pullin) found a small bag of suspected methamphetmine "right

underneath us" in the area where they struggled with Battle.[8] He did not see Battle throw anything on the ground. Deputy Pullin purportedly found a second baggie containing suspected methamphetamine "in the same spot, kind of close to the wall between the little table stand and the TV, just that same area." (RR 95-96) He insisted that these two baggies were not there before Battle arrived. He testified that he was "confident" that this contraband must have come from Battle. (RR 96)

Officer Glenn testified that he "was made aware" that Battle had threatened Millican at the time.[9] However, he did not hear or see any threats made. (RR 97) The officers were unable to obtain fingerprints from the baggies that they seized. (RR 100)

On cross-examination, Officer Glenn testified that Battle's hands were in his pockets when he walked into the apartment. (RR 106) He is pretty sure that he grabbed hold of one of Battle's arms "maybe his left" when he first

---

[8]    The video recording does not support Officer Glenn's testimony that this baggie was "found" "right underneath us." When Deputy Pullin directs the officer making the video recording to the area where he purportedly found the baggie (at approximately 3:36 in the video), the deputy is indicating an area between the television and another piece of furniture containing wicker baskets, several feet from where the officers took Battle down. (SX 1)

[9]    Presumably, Millican shared this information with the deputy.

tried to apprehend him. He conceded, however, that one of the other officers may have grabbed one of his arms and pulled it from his pocket. (RR 107) He does not remember Millican telling him those could have been her drugs. (RR 108) He agreed that Battled steadfastly denied that the narcotics were his. Officer Glenn never personally saw Battle in possession of them. (RR 111)

On redirect, Officer Glenn identified the video taken from the scene as State's Exhibit 1. (RR 113) The exhibit was admitted without objection. (RR 114) The trial court viewed the tape. (RR 115)

Chief Deputy Clint Pullin was also in Millican's apartment when the calls were made. (RR 118) He testified that they searched her apartment beforehand to make sure she did not have narcotics and they did not find any. (RR 119) The first suspect who came to Millican's apartment was arrested without incident. Deputy Pullin testified that this suspect had no opportunity to throw any narcotics on the floor of the apartment. (RR 120)

When Battle arrived and Officer Glenn attempted to apprehend him, Deputy Pullin testified that Battle's right arm knocked some items off the top of the television and they fell to the floor. Officer Glenn then patted him down for narcotics and weapons and found none. (RR 121)

Deputy Pullin did not see Battle throw anything down. But because Millican had called Battle for a drug deal and because the deputy had seen Battle's arm come across the top of the television and knock some things to the floor, he searched around the television and found a baggie of methamphetamine. (RR 122) He found the other baggie behind the television. (RR 123) It was clear from Battle's telephone conversation with Millican that she wanted to buy drugs from him. (RR 125)

On cross-examination, Deputy Pullin acknowledged that he did not personally search Millican's apartment. (RR 127-128) He also agreed that Battle thought the drugs were planted. (RR 128)

DPS forsenic scientist Brian Kivlighn testified that one of the baggies contained 1.66 grams of methamphetamine and the second bag contained 2.33 grams. (RR 136) Collectively, they contained 3.99 grams. (RR 137)

Casey Wilks is an investigator with the Bosque County Sheriff's Department. (RR 140) Based on what he overheard in the telephone calls between Millican and Battle, he understood that Battle was supposed to bring methamphetamine to the apartment. However, he only heard Battle make "very vague" statements as best he could recall, and he did not hear Battle state that he was bringing methamphetamine to Millican. (RR 142)

On cross-examination, he conceded that he did not personally see Battle tossing anything down. He was 10-12 feet away, prepared to use his taser if necessary. (RR 146)

The State rested after Wilks's testimony.

Brandon Battle testified in his own defense. (RR 149) He acknowledged that he had been to prison several times, primarily for drug offenses. He recalled that, on the date in question, he awakened around noon after having been up until about 3:00 in the morning. When he awakened, he found two text messages on his phone from Millican: one proposing oral sex and and one asking for a teener. He did not respond to the latter message. (RR 150) When he returned Millican's calls, she told him she needed a "T." He told her that he did not have any drugs but he was on the way to follow up on her invitation for sexual activity. (RR 150-51)

> Not one time did I ever say anything about dope or price of dope as Officer Glenn said. That was her. All I said is I would get dressed and I'll be on my way.

(RR 151)

Battle insisted that he did not have any methamphetamine or throw any down on that occasion. In fact, he was "one thousand percent certain" that his fingerprints would not be on the baggies. (RR 152) He explained that

he has a good-paying job with Big Creek Construction, has started a family, owns a home and car, and had changed his life after all those years in prison. He had no need or incentive to sell drugs. (RR 152-53) He is on parole and regularly meets with his parole officer as required. He explained that the parole office did not oppose his release on bond in this case because they considered the case to be frivolous. The district attorney's office took no action on the case for over six months. (RR 153-54) He concluded his direct testimony by again insisting that he did not throw the narcotics down in Millican's apartment and did not possess any narcotics on that occasion. (RR 154)

On cross-examination, Battle testified about his prior convictions. (RR 155-157) He insisted that he went over to Millican's apartment only for oral sex. (RR 158) He agreed that Millican asked for a teener but observed that no witness testified that he had offered to sell her any narcotics. The only testimony was that he said he was getting dressed and then would come over. (RR 159-60) Battle believes that he was set up and the drugs were planted. (RR 163)

On redirect, he explained that he decided to waive his right to a jury trial and go before the judge because he felt the judge would give him a fair trial. (RR 172)

After considering the evidence and argument, the trial court found Battle "guilty of the offense of possession of a controlled substance, methamphetamine, one gram or more, but less than four grams as alleged in the indictment." (RR 180)

The punishment phase consisted of Battle pleading true to the enhancement allegations. (RR 181-82) After hearing very brief argument, the trial court sentenced Battle to twenty-five years' imprisonment. (CR 32-33), (RR 183)

## Summary of the Argument

Bernard Battle did not have exclusive control of the premises where he was arrested. Two other drug users/dealers were present. One of them admitted that the methamphetamine found could be hers and later claimed it as her own. The circumstantial evidence the State relied on to connect Battle to the contraband was woefully lacking. Even when viewed in the light most favorable to the trial court's finding, the evidence is legally insufficient to support a finding that Battle knowingly possessed the narcotics.

Because the evidence referenced above is so weak and because numerous factors tend to contradict the trial court's finding that Battle knowingly possessed the narcotics, the evidence is factually insufficient to support a finding that Battle knowingly possessed the narcotics.

The judgment recites that Battle was convicted of a first degree felony. However, possession of between one and four grams of methamphetamine is a third degree felony. The enhancement allegations have no bearing on this issue. The judgment should be modified to accurately reflect the offense of which Battle was convicted.

# Argument

**First Issue:** **The evidence is legally insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.**

Battle did not have exclusive control of the premises where he was arrested. Two other drug users/dealers were present. One of them admitted that the methamphetamine found could be hers and later claimed it as her own. The circumstantial evidence the State relied on to connect Battle to the contraband was woefully lacking. Even when viewed in the light most favorable to the trial court's finding, the evidence is legally insufficient to support a finding that Battle knowingly possessed the narcotics.

## A. The Court Reviews the Evidence in a Light Favorable to the Verdict.

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

> Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial, but they are not permitted to draw conclusions based on speculation. In *Hooper*, we explained that "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." While a conclusion that is reached by speculation may not be completely unreasonable, such conclusion is not sufficiently based upon facts or evidence to support a conviction beyond a reasonable doubt.

*Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)).

These same principles apply in an appeal following a bench trial. *Bozeman v. State*, 340 S.W.3d 515, 519 (Tex. App.—Texarkana), *rev'd on other grounds*, 353 S.W.3d 886 (Tex. Crim. App. 2011).

## B. The Evidence Must Link the Accused to the Narcotics.

The State had to prove, among other things, that Battle knowingly possessed the methamphetamine. To prove possession, the State had to present evidence that Appellant exercised "actual care, custody, control, or management" of the methamphetamine. *Poindexter v. State*, 153 S.W.3d 402,

405–06 (Tex. Crim. App. 2005); *Triplett v. State*, 292 S.W.3d 205, 208 (Tex. App.—Amarillo 2009, pet. ref'd).

And when the accused did not have exclusive possession of the location where the narcotics were found, the State must offer evidence of additional independent facts or circumstances that tend to connect or link the accused to the narcotics. *Poindexter*, 153 S.W.3d at 406; *Triplett*, 292 S.W.3d at 208; *see Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006).

This Court has identified the following potential links that may tend to connect the accused to the narcotics:

> (1) whether the contraband was in plain view or recovered from an enclosed place; (2) whether the defendant was the owner of the premises or had the right to possess or control the place where the contraband was found; (3) whether the defendant was found in possession of a large amount of cash; (4) whether the contraband was conveniently accessible to the defendant; (5) whether the contraband was found in close proximity to the defendant; (6) whether an odor of contraband was present; (7) whether the defendant possessed other contraband when arrested; (8) whether the defendant possessed paraphernalia to use the contraband; (9) whether paraphernalia to use the contraband was available to or in plain view of the defendant; (10) whether the physical condition of the defendant indicated recent consumption of the contraband in question; (11) whether conduct by the defendant indicated a consciousness of guilt; (12) whether the defendant made any incriminating statements when arrested; (13) whether the defendant attempted to flee; (14)

whether the defendant made furtive gestures; (15) whether the defendant had a special connection to the contraband; (16) whether the persons present gave conflicting statements about relevant matters; (17) the quantity of the contraband discovered; (18) whether the defendant was armed; (19) whether the defendant was observed in a suspicious place under suspicious circumstances; (20) whether the accused was familiar or had previous experience with drugs; and, (21) whether any forensic evidence (e.g., fingerprints, DNA, etc.) connects the defendant to the contraband or its container.

*Triplett*, 292 S.W.3d at 209; *see also Evans*, 202 S.W.3d at 162 n.12; *Stewart v. State*, No. 10-14-00183-CR, 2015 WL 3823273, at *7 (Tex. App.—Waco June 18, 2015, pet. filed) (mem. op., not designated for publication).

No set formula exists for determining whether there are sufficient links to support an inference of knowing possession. *Stewart*, 2015 WL 3823273, at *7; *Triplett*, 292 S.W.3d at 209. Rather, each case must be examined according to its own facts. *Triplett*, 292 S.W.3d at 209. The number of links is not as important as the combined logical force of the evidence tending to link the accused to the contraband. *Stewart*, 2015 WL 3823273, at *7; *Triplett*, 292 S.W.3d at 209.

## C. The Evidence Does Not Link Battle to the Narcotics.

Battle did not have exclusive control of the premises where he was arrested. Two other drug users/dealers were present. One of them admitted

that the methamphetamine found could be hers and later claimed it as her own. Therefore, the State needed to present additional evidence connecting Battle to the narcotics he has been accused of possessing. *See Evans*, 202 S.W.3d at 161–62; *Poindexter*, 153 S.W.3d at 406; *Triplett*, 292 S.W.3d at 208. However, the links are woefully lacking.

Here counsel discusses the factors that this Court has identified as significant in connecting an accused such as Battle to contraband:

1) it cannot be said that the contraband was in plain view. A review of State's Exhibit 1 indicates that Deputy Pullin "found" the first baggie over two minutes after Battle was arrested.[10] Yet, the area around the television was not in any manner cluttered so as to obstruct the officers' view. It took him another two and a half minutes to "find" the second baggie. (SX 1) What took so long?

2) Battle did not own the premises.

3) Battle did not have a large amount of cash.

4) The contraband was not conveniently accessible to Battle.

5) The contraband was allegedly found somewhat near Battle.

6) There was no odor of contraband present.

7) Battle did not possess any other contraband.

---

[10] Officer Glenn had complete control over Battle without further resistance at 00:34 on the video. It appears that Deputy Pullin "discovered" the first baggie at around 02:38. He did not "discover" the second baggie until around 05:05 on the video. (SX 1)

8) Battle did not have any drug paraphernalia.

9) There was no drug paraphernalia in plain view.

10) Battle was not under the influence of anything.

11) Battle's conduct was consistent with lack of guilt—not consciousness of guilt. He did not resist arrest. His response when confronted with the contraband speaks volumes as to his innocence.

12) Battle made no incriminating statements and insisted on his innocence.

13) Battle did not resist arrest or try to flee.

14) The State will likely argue that Battle made a furtive gesture when Officer Glenn first alerted him to the officers' presence. But the video does not support that. Battle's hands were in his pockets until the officers took him down.

15) Battle had no special connection to the contraband.

16) Battle provided a consistent response regarding his lack of knowledge about the contraband which he continues to maintain.

17) The officers "found" a relatively small quantity of contraband in terms of that which would be readily apparent to a casual observer.

18) Battle was not armed.

19) Battle was arguably in a suspicious place under suspicious circumstances because Millican was trying to set up drug deals.

20) Battle has previous experience with narcotics.

21) There were no fingerprints or other forensic evidence connecting Battle to the contraband.

*See Triplett*, 292 S.W.3d at 209.

To summarize, the only links tending to connect Battle to the narcotics were: (1) he was in the vicinity of where the narcotics were allegedly found; (2) he purportedly made a furtive gesture although the video evidence does not support this assertion; (3) he was in a suspicious place under suspicious circumstances; and (4) he has a prior drug history.

The first two of these links are quite tenuous due to the nature of the circumstantial evidence, particularly when viewed in conjunction with the video evidence. The other two links, without more, offer no significant weight to the evidence. For these reasons, the combined logical force of these factors do not sufficiently link Battle to the narcotics that the State has accused him of possessing.

Accordingly, the evidence is legally insufficient to support the trial court's finding that Battle knowingly possessed the narcotics.

**D. The Court Must Reverse and Render a Judgment of Acquittal.**

When the evidence is legally insufficient, the proper remedy is to reverse the judgment of conviction and render a judgments of acquittal. *See* TEX. R. APP. P. 43.2(c); *Byrd v. State*, 336 S.W.3d 242, 258 (Tex. Crim. App. 2011).

For these reasons, because the evidence is legally insufficient to prove that Battle knowingly possessed the contraband, Battle asks the Court to reverse the judgment of conviction for possession of methamphetamine and render a judgment of acquittal.

**Second Issue:** **The evidence is factually insufficient to support the trial court's finding that Battle knowingly possessed the narcotics found in the apartment.**

Battle did not have exclusive control of the premises where he was arrested. Two other drug users/dealers were present. One of them admitted that the methamphetamine found could be hers and later claimed it as her own. The circumstantial evidence the State relied on to connect Battle to the contraband was woefully lacking. Because the evidence is so weak and because numerous factors tend to contradict the trial court's finding that Battle knowingly possessed the narcotics, the evidence is factually insufficient to support this finding.

## A. The Court of Criminal Appeals is Reconsidering *Brooks*.

In *Brooks*, a plurality of the Court of Criminal Appeals concluded that Texas appellate courts should not consider factual-insufficiency claims because, among other things, the standard of review had become "indistinguishable" from the legal-insufficiency standard of *Jackson v. Virginia*. *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010) (plurality op.).

That decision has not been without its critics. *See, e.g., Johnson v. State*, 419 S.W.3d 665, 671 n.2 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *see also Brooks*, 323 S.W.3d at 926-32 (Price, J., dissenting). Among other things, these opinions refer to the constitutional and statutory authority for appellate courts to consider factual-insufficiency challenges. For example, article 44.25 of the Code of Criminal Procedure invests Texas appellate courts with jurisdiction to reverse a criminal judgment "upon the facts." TEX. CODE CRIM. PROC. art. 44.25. Article V, section 6 of the Texas Constitution provides that the decisions of the courts of appeals "shall be conclusive on all **questions of fact** brought before them on appeal." TEX. CONST. art. V, § 6 (emphasis added).

More importantly, the Court of Criminal Appeals has recently granted review in a case indicating that the Court is prepared to revisit the viability of a defendant's right to challenge the factual sufficiency of the evidence. *See Walker v. State*, No. PD-1429-14 (Tex. Crim. App. Oct. 14, 2015) (order granting discretionary review). The Court granted review in that case and a companion case on the following issue:

> The Court of Appeals erred in finding legally sufficient evidence
> in this case, and allows this Court to reexamine the issue of

factually sufficient evidence from *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

Therefore, Battle presents this issue understanding that the Court of Criminal Appeals may soon reinstate the factual-insufficiency challenge authorized both by statute and by the Texas Constitution.

**B. The Court Reviews the Evidence in a Neutral Light.**

The standard of review for a factual-insufficiency challenge differs from a legal-insufficiency challenge. The appellate court:

> asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof . . . to the extent that the [finding of guilt] is clearly wrong and manifestly unjust.

*Ward v. State*, 48 S.W.3d 383, 387 (Tex. App.—Waco 2001, pet. ref'd) (quoting *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)); *accord Assiter v. State*, 58 S.W.3d 743, 747-48 (Tex. App.—Amarillo 2000, no pet.).

The appellate court does not employ the prism of the light most favorable to the verdict when viewing the evidence. *Johnson*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Assiter*, 58 S.W.3d at 747; *Ward*, 48 S.W.3d at 387.

"The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)); *Ward*, 48 S.W.3d at 387.

The appellate court "does not indulge in inferences." *Johnson*, 23 S.W.3d at 7; *Ward*, 48 S.W.3d at 387. "Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment." *Johnson*, 23 S.W.3d at 7 (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L. REV. 515, 519 (1991)); *Ward*, 48 S.W.3d at 388.

When this Court applies this standard to the evidence, the Court will be left to conclude that the evidence is factually insufficient to support the trial court's finding that Battle knowingly possessed the narcotics.

**C. The Evidence is Factually Insufficient to Link Battle to the Narcotics.**

Battle did not have exclusive control of the premises where he was arrested. Two other drug users/dealers were present. One of them admitted that the methamphetamine found could be hers and later claimed it as her

own. Therefore, the State needed to present additional evidence connecting Battle to the narcotics he has been accused of possessing. *See Evans*, 202 S.W.3d at 161–62; *Poindexter*, 153 S.W.3d at 406; *Triplett*, 292 S.W.3d at 208.

As previously discussed, the only links tending to connect Battle to the narcotics were: (1) he was in the vicinity of where the narcotics were allegedly found; (2) he purportedly made a furtive gesture although the video evidence does not support this assertion; (3) he was in a suspicious place under suspicious circumstances; and (4) he has a prior drug history.

By contrast, numerous factors tend to contradict the trial court's finding that Battle knowingly possessed the narcotics: (1) Millican claimed ownership of the narcotics in a Facebook message (RR 74); (2) Millican testified that the "it might have been a possibility" that the narcotics were hers (RR 73-74); (3) the video evidence does not support the trial court's finding because it shows Battle with his hands in his pockets when the police take him down—in other words, he did not have an opportunity to discard any contraband (SX 1); (4) the length of time it took the officers to "find" the two baggies in that small, uncluttered area of the living room contradicts the State's theory that Battle had discarded the contraband (SX 1); (5) the State offered no affirmative testimony that anyone heard Battle agree to bring

Millican any narcotics; and (6) Battle's fingerprints were not on the baggies. (RR 100). In fact, counsel could go through the other 15 factors listed earlier in the brief that do NOT tend to connect Battle to the narcotics, because each of them tends to contradict the trial court's finding.[11]

For these reasons, Battle contends that: (1) the evidence tending to connect him to the narcotics "is so obviously weak as to undermine confidence" in the trial court's finding; or alternatively (2) the evidence tending to connect him to the narcotics, "although adequate if taken alone, is greatly outweighed by contrary proof . . . to the extent that the [finding of guilt] is clearly wrong and manifestly unjust." *See Denny v. State*, No. 13-00-00510-CR, 2001 WL 34615524, at *3 (Tex. App.—Corpus Christi 2001, pet. ref'd) (not designated for publication); *White v. State*, 890 S.W.2d 131, 139 (Tex. App.—Texarkana 1994, pet. ref'd); *see also Johnson*, 23 S.W.3d at 11; *Assiter*, 58 S.W.3d at 747-48; *Ward*, 48 S.W.3d at 387.

---

[11]     For clarity, the other 15 factors were those numbered 2-4, 6-13, and 15-18.

**D. The Court Must Reverse the Judgment and Remand for a New Trial.**

When the evidence is factually insufficient, the proper remedy is to reverse the judgment of conviction and remand for a new trial. *See* TEX. R. APP. P. 43.2(d); *Clewis*, 922 S.W.2d at 133-34; *Denny*, 2001 WL 34615524, at *3; *Assiter*, 58 S.W.3d at 748; *Ward*, 48 S.W.3d at 387; *White*, 890 S.W.2d at 139.

For these reasons, because the evidence is factually insufficient to prove that Battle knowingly possessed the contraband, Battle asks the Court to reverse the judgment of conviction for possession of methamphetamine and remand this case for a new trial.

**Third Issue:** The judgment incorrectly recites that Battle was convicted of a first degree felony.

The judgment recites that Battle was convicted of a first degree felony. However, possession of between one and four grams of methamphetamine is a third degree felony. The enhancement allegations have no bearing on this issue. The judgment should be modified to accurately reflect the offense of which Battle was convicted.

## A. The Trial Court Must Enter a Proper Judgment.

"On each verdict of acquittal or conviction, the proper judgment shall be entered immediately." TEX. CODE CRIM. PROC. art. 37.12. Among other things, a "proper judgment" must reflect "[t]he offense or offenses for which the defendant was convicted." *Id.* 42.01, § 1(13); *see Mitchell v. State*, 942 S.W.2d 170, 173-75 (Tex. App.—Amarillo 1997, pet. ref'd).

## B. No Objection is Required.

Because article 37.12 imposes a *sua sponte* duty on the trial court to sign and enter a "proper judgment," a complaint regarding erroneous recitals in the judgment cannot be forfeited by a failure to object in the trial court. *See Garner v. State*, 214 S.W.3d 705, 706 (Tex. App.–Waco 2007, no pet.); *Cobb v.*

*State*, 95 S.W.3d 664, 666-67 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd) ("[A]n appellate court, on its own motion, can reform the judgment to make the record speak the truth. In fact, it has a duty to do so, and such duty is not dependent upon a request by either party or whether they objected and preserved error in the trial court.").

**C. The Judgment is Not "Proper."**

The indictment alleged that Battle possessed one gram or more but less than four grams of methamphetamine, which is a third degree felony. (CR 5); *see* TEX. HEALTH & SAFETY CODE § 481.115(c). In fact, the indictment states on its face that the offense charged was a third degree felony. (CR 5) At the conclusion of the evidence, the trial court pronounced that it found Battle "guilty of the offense of possession of a controlled substance, methamphetamine, one gram or more, but less than four grams as alleged in the indictment." (RR 180) And the judgment recites that Battle was convicted of this offense. (CR 32-33) However, the judgment erroneously recites that Battle was convicted of a "1ST DEGREE FELONY." (CR 32)

The enhancement allegations do not change the analysis. Rather, the enhancement allegations merely serve to enhance the applicable punishment range to that for an habitual offender and do not change the level of the underlying offense. *See Martin v. State*, 405 S.W.3d 944, 949-50 (Tex. App.—Texarkana 2013, no pet.).

**D. This Court Must Correct the Judgment.**

Therefore, Battle asks the Court to modify the judgment to reflect that the offense of which he was convicted was a third degree felony, not a first degree felony. *See* TEX. R. APP. P. 43.2(b) (appellate court may modify the trial court's judgment); *Garner*, 214 S.W.3d at 707; *Cobb*, 95 S.W.3d at 668; *Asberry*, 813 S.W.2d at 531.

# Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant Brandon Bernard Battle asks the Court to: (1) reverse the judgment and render a judgment of acquittal; (2) reverse the judgment and remand this case for a new trial; (3) modify the judgment by modifying the provision describing the degree of the offense of which he was convicted and correcting same; and (4) grant such other and further relief to which he may show himself justly entitled.

Respectfully submitted,


   */s/ Alan Bennett*
E. Alan Bennett
SBOT #02140700
Attorney for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas  76710
Telephone:    (254) 772-8022
Fax:    (254) 772-9297
Email:    abennett@slmpc.com

## Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 7,162 words.

*/s/ Alan Bennett*
E. Alan Bennett

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this document has been served by e-mail on November 18, 2015 to counsel for the State, B.J. Shepherd at 220thda@gmail.com.

*/s/ Alan Bennett*
E. Alan Bennett
